Beatrice MAYNARD, Plaintiff, Appellee,

v.

**CENTRAL INTELLIGENCE AGENCY,**
Defendant, Appellant.

Beatrice MAYNARD, Plaintiff,
Appellant,

v.

**CENTRAL INTELLIGENCE AGENCY,**
et al., Defendants, Appellees.

Nos. 91–1334, 92–1615.

United States Court of Appeals,
First Circuit.

Heard Sept. 14, 1992.

Decided Feb. 4, 1993.

Steven J. Lyman with whom Law Office of Carl D. McCue was on brief for plaintiff, appellee.

John P. Schnitker, Appellate Staff, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Richard S. Cohen, U.S. Atty., and Leonard Schaitman, Appellate Staff, Civ. Div., Dept. of Justice, were on briefs for defendants, appellees.

Before BREYER, Chief Judge, CAMPBELL, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Plaintiff Beatrice Maynard brought this action in the district court to compel disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of certain government documents and parts of documents pertaining to the disappearance of her former husband, Robert Thompson, during a flight over Cuba in December of 1961. Maynard had sought information about this from various agencies, including the Central Intelligence Agency ("CIA"), the Federal Bureau of Investigation ("FBI"), the Defense Intelligence Agency ("DIA"), the State Department, the Immigration and Naturalization Service ("INS"), the United States Customs Service ("Customs Service"), the Federal Aviation Administration ("FAA"), the National Personnel Records Center ("NPRC"), and the Navy Department.[1] While certain records and other materials were provided to her, Maynard felt that she was entitled to more, and so brought this suit.

After reviewing several documents *in camera,* the district court ordered disclosure of two items of information—one name and one paragraph—that the government had expressly redacted from materials it had furnished to plaintiff. The CIA appeals from the court's direction to reveal the paragraph, arguing that the paragraph was properly withheld under FOIA's Exemptions 1 and 3, 5 U.S.C. § 552(b)(1), (3).[2] In all other respects, the district court granted summary judgment in favor of the defendant agencies, denying plaintiff's requests for further information, for further document searches, and for attorney's fees.

---

1. The district court granted the parties' stipulated dismissal of the FAA, the NPRC, and the Navy in February 1990.

2. FOIA Exemption 1 provides that the FOIA's disclosure requirements do not apply to matters that are "(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The information at issue here was classified pursuant to Executive Order 12356, 47 Fed.Reg. 14874 (1982).

FOIA Exemption 3 pertains to matters that are exempted from disclosure by a statute that either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The exempting statute here is 50 U.S.C. § 403(d)(3), which provides that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure."

Plaintiff now appeals from these judgments.

Finding that Exemptions 1 and 3 authorize the CIA's withholding of the redacted paragraph, we reverse the order requiring the CIA to disclose it.[3] We affirm the district court's grant of summary judgment for the defendant agencies.

## I.

### 1. *The CIA's Appeal*

On January 22, 1987, plaintiff submitted FOIA requests to the defendant agencies, seeking any information they might have concerning her former husband, Robert Thompson. She said he disappeared along with Robert Swanner on a flight over Cuba, in December of 1961. Thompson apparently was involved in the distribution of anti-Castro leaflets; plaintiff believed him to have worked for the CIA. Among documents produced by the FBI in response to plaintiff's requests was a redacted memo dated December 22, 1961. The FBI informed plaintiff that the excised information had originated with the CIA and was being withheld under FOIA Exemptions 1 and 3 at the CIA's request. Plaintiff brought this action in the district court in February 1988, seeking more complete disclosure, including disclosure of the withheld paragraph.

After the agency defendants moved for summary judgment, the district court in March of 1990 ordered the government to submit for the court's *in camera* inspection all withheld and redacted documents in their complete form. The government did so on May 1, 1990. Among the documents submitted were thirty-two pages the FBI had located in its search for documents responsive to plaintiff's FOIA request.[4] This material included the redacted memo of December 22, 1961 that has since become the subject of the CIA's appeal.

To help explain its position, the CIA submitted to the district court the public declaration of Katherine M. Stricker, an Information Review Officer for the CIA's Directorate of Operations. With respect to Exemption 1, which exempts national security information classified pursuant to an Executive Order, Stricker explained that she had personally reviewed the classification determinations under the standards of Executive Order 12356. Based on that review, Stricker determined that the withheld information would "reveal the identity of an intelligence source or disclose an intelligence method," the unauthorized disclosure of which, "either by itself or in the context of other information, reasonably could be expected to cause damage to the national security." *See* Executive Order 12356, §§ 1.3(a)(4), (c), 47 Fed.Reg. 14874, 14876. Accordingly, she said, the information was properly classified at the "SECRET level" and was exempt from disclosure under FOIA Exemption 1.

With respect to Exemption 3, which protects information exempted from disclosure by statute, Stricker explained that, similar to Executive Order 12356, the National Security Act, 50 U.S.C. § 403(d)(3), requires the Director of the CIA to protect intelligence sources and methods from unauthorized disclosure. Stricker concluded that the redacted information fell within the ambit of the statute because it identified the use of particular intelligence methods used during specific time periods. According to Stricker, the release of such information would allow hostile intelligence organizations to neutralize the use of those methods, thereby causing a concomitant loss of intelligence.

On November 14, 1990, the district court ordered the government to give to plaintiff information from three of the documents subject to *in camera* review. This included the information at issue here—the third full paragraph on page 2 of the December

---

**3.** For the record, that order was not issued by the Judge from whose final orders the appeal is taken.

**4.** The State Department also submitted for *in camera* review a document on which the State

Department had redacted certain identifying information, such as the names of individuals, for personal privacy concerns pursuant to FOIA Exemption 6.

22, 1961 memo.[5] The CIA moved for reconsideration of the portion of the court's order regarding the redacted paragraph and submitted an *in camera* declaration by Stricker, which explained in further detail the nature of the information withheld. On February 1, 1991, the district court granted the CIA's motion for reconsideration, but on reconsideration, the court affirmed its earlier ruling, finding that "the movant's assertion that disclosure will 'reveal its sources and methods' in a matter now approximately thirty years old is without substance and is, indeed, the height of bureaucratic disingenuousness." The CIA appeals from this order.

### A. *FOIA Exemption 3*

The FOIA gives members of the public access to documents held in government files. Every federal agency "upon any request for records which . . . reasonably describes such records" must make the records "promptly available to any person." 5 U.S.C. § 552(a)(3). Nine categories of documents are exempted from this broad disclosure requirement.

■ Exemption 3 permits a federal agency to withhold matters that are:

(3) specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Two questions need to be answered in determining whether Exemption 3 applies in a particular situation. *CIA v. Sims*, 471 U.S. 159, 167, 105 S.Ct. 1881, 1886, 85 L.Ed.2d 173 (1985). First, does the statute constitute a "statutory exemption to disclosure within the meaning of Exemption 3"? Second, is the requested information "included within" the statute's "protection"? *Id.*

■ The first question has already been answered affirmatively for present purposes. In *Sims*, the Supreme Court held that 50 U.S.C. § 403(d)(3), which provides that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure," is an Exemption 3 statute because it specifies the types of material to be withheld under subpart (B) of the Exemption. 471 U.S. at 167–68, 105 S.Ct. at 1886–87; *accord Knight v. CIA*, 872 F.2d 660, 663 (5th Cir.1989), *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 474 (1990); *Miller v. Casey*, 730 F.2d 773, 777 (D.C.Cir.1984).

■ In answering the second question— whether the requested information is included within the statute's "protection"— this court has stated that,

once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA *de novo* review normally ends.

*Aronson v. IRS*, 973 F.2d 962, 965, 967 (1st Cir.1992).

The Supreme Court has said,

it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.

*Sims*, 471 U.S. at 180, 105 S.Ct. at 1893. In the intelligence area, the Court has commented that judges "have little or no background in the delicate business of intelligence gathering" and may be unable to comprehend the significance of material

---

5. The district court's order of November 14, 1990, also required disclosure of material contained in two other documents: (1) a single name (E.L. Johnson) contained in an FBI document dated November 20, 1961; and (2) the third full paragraph of an FBI memorandum dated July 5, 1962. The FBI requested the district court to reconsider the portion of the order regarding the July 5, 1962 memorandum, arguing that the material was exempt from disclosure under FOIA Exemption 7(D) as information obtained from a confidential source. The district court granted the FBI's motion for reconsideration and vacated that portion of its order on February 1, 1991.

that appears to be innocuous, but in fact can reveal a significant intelligence source or method. *Id.* at 176, 105 S.Ct. at 1891. Therefore, in determining whether withheld material relates to intelligence sources or methods, a court must "accord substantial weight and due consideration to the CIA's affidavits." *E.g., Fitzgibbon v. CIA,* 911 F.2d 755, 762 (D.C.Cir.1990); *see Sims* 471 U.S. at 170, 105 S.Ct. at 1888 ("Congress intended to give the Director of Central Intelligence broad power to protect the secrecy and integrity of the intelligence process").

■ We have examined the unredacted version of the December 22, 1961 memorandum. In our opinion, it is at very least "arguable" that the requested paragraph falls within 50 U.S.C. § 403(d)(3) for the reason the CIA gave, to wit, that it could reveal intelligence methods. *See Sims,* 471 U.S. at 180–81, 105 S.Ct. at 1893–94; *Aronson,* 973 F.2d at 967. Giving due deference to the agency's determination, we hold that the paragraph is exempt from disclosure under FOIA Exemption 3 and 50 U.S.C. § 403(d)(3). The district court erred in ruling otherwise.[6]

### B. *FOIA Exemption 1*

While our decision under Exemption 3 ends the matter, we note that FOIA Exemption 1 leads to the same result. Exemption 1 permits the withholding of matters that are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). Executive Order 12356, upon which the CIA relies, specifically authorizes the withholding of information concerning "intelligence sources and methods," § 1.3(a)(4), 47 Fed.Reg. 14874, 14876, and declares that unauthorized disclosure of "intelligence sources and methods" is "presumed to cause damage to the national security," § 1.3(c), 47 Fed.Reg. at 14876.

■ When, as here, Exemptions 1 and 3 are claimed on the basis of potential disclosure of intelligence sources or methods, the standard of reviewing an agency's decision to withhold information is essentially the same.[7] *Hrones v. CIA,* 685 F.2d 13, 17 (1st Cir.1982); *Military Audit Project v. Casey,* 656 F.2d 724, 736–37 n. 39 (D.C.Cir.1981) (Exemption 3 and 1 provide overlapping protection in cases involving intelligence sources and methods); *see Sims,* 471 U.S. at 190 n. 6, 105 S.Ct. at 1898 n. 6 (Marshall, J., concurring) (current Executive Order 12356 moves Exemption 1 closer to Exemption 3 than its predecessor Executive Order 12065). Courts, therefore, accord substantial deference to the CIA's determination that information must be

6. We do not agree with the district court that merely because the information here is thirty years old, it cannot detrimentally reveal intelligence sources or methods. Plaintiff conceded at oral argument before this court that if the withheld information relates to intelligence sources or methods, the passage of thirty years, by itself, is insufficient to require an agency to disclose the information. Courts have generally rejected the contention that the mere age of intelligence information rules out Exemption 3. *Fitzgibbon,* 911 F.2d at 763–64. Reluctance stems from recognition that it is virtually impossible for an outsider to ascertain what effect the passage of time may or may not have had to mitigate the harm from disclosure of sources and methods. Such is true, certainly, as to events that have occurred well within the careers of living persons including governmental leaders (like Cuba's leader) still in power. The CIA, not the judiciary, is better able to weigh the risks that disclosure of such information may

reveal intelligence sources and methods so as to endanger national security. Courts have accordingly upheld pursuant to Exemption 3 and 50 *U.S.C.* § 403(d)(3) the withholding of information as old as that sought by plaintiff here. *Sims,* 471 U.S. at 180, 105 S.Ct. at 1893 (approximately thirty-year-old information); *Fitzgibbon* 911 F.2d at 763–64 (same).

7. Although the standards are substantially identical, courts, in reviewing Exemption 1 claims, state that their review is *de novo. E.g., Goldberg v. United States Dept. of State,* 818 F.2d 71, 77 (D.C.Cir.1987), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988). In carrying out this *de novo* review, courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." S.Conf.Rep.No. 1200, 93d Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6290.

withheld under Exemption 1, and will uphold the agency's decision so long as the withheld information "logically falls into the category of the exemption indicated," and there is no evidence of bad faith on the part of the agency. *E.g., Bell v. United States,* 563 F.2d 484, 487 (1st Cir.1977); *King v. United States Dep. of Justice,* 830 F.2d 210, 217 (D.C.Cir.1987). As already stated, the information withheld by the CIA in this case "arguably" or "logically" pertains to intelligence methods. There is no evidence of bad faith on the part of the agency.[8] The redacted paragraph is, therefore, exempt from disclosure under FOIA Exemption 1 as well as under Exemption 3.[9]

### 2. *Plaintiff's Appeal*

Plaintiff alleges numerous errors in the district court's discovery orders, grants of summary judgment, and denial of attorney's fees. Plaintiff complains specifically of the following district court actions: 1) denying plaintiff's request for *Vaughn* in-

dices;[10] 2) ruling that the defendant agencies had conducted adequate searches; 3) ruling that the government had properly claimed exemptions under the FOIA; 4) denying various discovery requests; and 5) denying attorney's fees to plaintiff. We address each of these claims of error and find that none has any merit.

### A. Vaughn Index

■ Plaintiff contends that the district court erred in denying plaintiff's motion to compel each defendant agency to prepare a *Vaughn* index. A *Vaughn* index correlates information that an agency decides to withhold with the particular FOIA exemption or exemptions, explaining the agency's justification for nondisclosure. *E.g., Curran v. Department of Justice,* 813 F.2d 473, 475 n. 4 (1st Cir.1987); *Wightman v. Bureau of Alcohol, Tobacco & Firearms,* 755 F.2d 979, 981 n. 1 (1st Cir.1985). An adequate *Vaughn* index serves three functions:

---

**8.** Plaintiff contends that the district court improperly denied discovery, which could have revealed agency bad faith. To support this argument, plaintiff cites *Weisberg v. United States Dept. of Justice,* 627 F.2d 365, 370–71 (D.C.Cir. 1980), in which the D.C. Circuit noted that discovery may be appropriate when the adequacy of an agency's search is in doubt. As discussed below, the agencies' affidavits demonstrate that their searches here were adequate. *See Gillin v. IRS,* 980 F.2d 819, 823 (1st Cir.1992) (citing *Goland v. CIA,* 607 F.2d 339, 355 (D.C.Cir.1978)) (absent showing of bad faith sufficient to impugn agency's affidavit demonstrating adequacy of search, district court has discretion to forego discovery), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). In any case, plaintiff's claims that the district court abused its discretion by denying her discovery are devoid of merit. *See infra* at 567. Thus, *Weisberg* is inapposite.

**9.** As with Exemption 3, the passage of some thirty years does not, by itself, invalidate the CIA's showing under Exemption 1. Executive Order 12356 provides, without time limit, that "[i]nformation shall be classified as long as required by national security considerations." § 1.4(a), 47 Fed.Reg. at 14877. Unlike its predecessor Executive Order 12065, Executive Order 12356 does not create a presumption favoring disclosure of information once it reaches a certain age. Courts have recognized that it would be extremely difficult for the judiciary to set particular time limitations upon Exemption 1,

at least within time parameters of the duration we are discussing here. *Bonner v. United States Dept. of State,* 724 F.Supp. 1028, 1033 n. 15 (D.D.C.1989), *vacated on other grounds,* 928 F.2d 1148 (D.C.Cir.1991). In this case, after review of the paragraph in question, Information Review Officer Stricker concluded that the "classification [of this information] should be maintained" in the interests of national security. We are not in a position to "second-guess" the CIA's conclusion regarding the need for continued classification of this material. *Branch v. FBI,* 700 F.Supp. 47, 48–49 & n. 4 (D.D.C.1988); *see Sims,* 471 U.S. at 178, 105 S.Ct. at 1892 ("[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context.") (citations and internal quotations omitted); *Bell,* 563 F.2d at 486–87 (upholding under Exemption 1 the withholding of approximately thirty-year-old information). *But see Wiener v. FBI,* 943 F.2d 972, 981 n. 15 (9th Cir.1991) (asking under Executive Order 12356 whether it is reasonable to expect disclosure of a twenty-year-old investigation to reveal the existence of a current intelligence investigation), *cert. denied,* —— U.S. ——, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992).

**10.** The name of these indices is derived from the seminal case, *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

it forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Keys v. United States Dept. of Justice,* 830 F.2d 337, 349 (D.C.Cir.1987) (quoting *Lykins v. United States Dept. of Justice,* 725 F.2d 1455, 1463 (D.C.Cir.1984)). We find no merit in plaintiff's claim of improper denial of *Vaughn* indices here.[11]

A *Vaughn* index was obviously not called for from the INS, the DIA or the Customs Service. These agencies disclaimed possession of any documents material to plaintiff's request. A *Vaughn* index could not even have been prepared in such circumstances.

As for the CIA, the district court denied plaintiff's motion for a *Vaughn* index, without prejudice, because plaintiff had failed to supply the CIA with data—e.g., the city or county of Thompson's birth and a copy of his birth certificate—that the CIA said was necessary to complete its search. Although plaintiff subsequently furnished the CIA with the requested information, the record nowhere indicates that plaintiff renewed her request for a *Vaughn* index from the CIA.

The CIA did file, in connection with its summary judgment motion, both public and *in camera* declarations, asserting that particular information redacted or expressly withheld was exempt from the FOIA under Exemptions 1 and 3 because it would reveal intelligence sources or methods. One such declaration was that of Information Review Officer Stricker. While this lacked specifics, a more detailed affidavit could have revealed the very intelligence sources or methods that the CIA wished to keep secret. *See, e.g., Doyle v. FBI,* 722 F.2d 554, 556 (9th Cir.1983) ("In certain FOIA cases—usually when national security exemptions are claimed—the government's public description of a document and the reasons for exemption may reveal the very information that the government claims is exempt from disclosure."); *Church of Scientology v. United States Dept. of Army,* 611 F.2d 738, 742 (9th Cir.1979) ("the government need not specify its objections in such detail as to compromise the secrecy of the information.").

When, as here, the agency, for good reason, does not furnish publicly the kind of detail required for a satisfactory *Vaughn* index, a district court may review documents *in camera. E.g., NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) ("[t]he *in camera* review provision is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved"); *Church of Scientology,* 611 F.2d at 742 (if court finds agency affidavits to be "too generalized to establish eligibility for an exemption, it may, in its discretion, proceed to examine the disputed documents *in camera* for a first-hand determination of their exempt status"). Discretionary *in camera* review enables the court to "determine whether the failure of the affidavit stemmed from mere inadvertence or from a truly overbroad reading of the exemption by the agency." *Irons v. Bell,* 596 F.2d 468, 471 n. 6 (1st Cir.1979). The government, however, retains at all times the burden of proving the exempt status of

---

11. Although plaintiff frames her claim as one of improper denial of *Vaughn* indices, her brief suggests that plaintiff also contests the adequacy of the *Vaughn* indices that were, in fact, provided by certain of the defendant agencies. Because a district court must have an adequate factual basis for making determinations as to the applicability of claimed FOIA exemptions,

*e.g., Bowers v. United States Dept. of Justice,* 930 F.2d 350, 353 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 308, 116 L.Ed.2d 250 (1991); *Ingle v. United States Dept. of Justice,* 698 F.2d 259, 263 (6th Cir.1983), we address both the adequacy of the agencies' *Vaughn* indices and the propriety of the district court's decision with

withheld documents.[12] *E.g., Church of Scientology,* 611 F.2d at 743.

■ *In camera* review is particularly appropriate when the documents withheld are brief and limited in number. *See, e.g., Ingle v. Department of Justice,* 698 F.2d 259, 264 (6th Cir.1983) ("full *in camera* reviews are appropriate in cases involving a very limited number of relatively brief documents"); *Church of Scientology,* 611 F.2d at 743 ("small number of documents requested, and their relative brevity, made these cases appropriate instances for exercise of the district court's inspection prerogative."). On the other hand, "where the documents in issue constitute hundreds or even thousands of pages; it is unreasonable to expect a trial judge to do as thorough job of illumination and characterization as would a party interested in the case." *Vaughn v. Rosen,* 484 F.2d 820, 825 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

■ The district court here conducted an *in camera* inspection of the relatively limited number of documents in which the CIA claimed exemptions. This provided an adequate factual basis for the district court's decision and obviated the need for further *Vaughn* indices from the CIA. *See, e.g., Irons,* 596 F.2d at 471 (*in camera* inspection of documents along with *in camera* testimony can fully establish applicability of FOIA exemption); *King,* 830 F.2d at 228 (after holding that *Vaughn* index was inadequate, D.C. Circuit suggests that district court on remand can review documents *in camera* ).

■ With respect to the State Department, the district court denied plaintiff's request for a *Vaughn* index because plaintiff did not contest the adequacy of the State Department's claimed exemption. The State Department reported that it had found four documents responsive to plaintiff's request. It released three of these in their entirety and the fourth with minor excisions to protect personal privacy interests pursuant to FOIA Exemption 6. The plaintiff did not challenge the excisions under Exemption 6, rendering unwarranted a *Vaughn* index at that time. The State Department subsequently submitted a declaration, explaining that it had withheld names and other identifying information, such as date and place of birth, address and occupation, of persons other than plaintiff's deceased husband, because "disclosure could subject these individuals or their families to possible embarrassment or harassment." This declaration fully met any requirement under *Vaughn* that the State Department provide a reasoned justification for its withholdings. Furthermore, the State Department submitted the one redacted document to the district court for *in camera* review.

■ Finally, in respect to the FBI, the district court *granted* plaintiff's motion for a *Vaughn* index. The FBI thereupon submitted two detailed declarations by David R. Lieberman, a special agent in the Freedom of Information–Privacy Acts Section of the FBI. Mr. Lieberman explained that the FBI had released twenty-five of forty-four pages of material to plaintiff,

respect to plaintiff's initial motion for *Vaughn* indices.

**12.** The 1974 amendments to the FOIA, P.L. 93–502, 88 Stat. 1561, 1562 (1974), expressly state that the government retains the burden of proving a document's exempt status even when a district court conducts *in camera* review:

> [The district court] may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

5 U.S.C. § 552(a)(4)(B). The legislative history of the 1974 amendments to the FOIA further clarifies the district court's discretion in conducting *in camera* review and the government's burden of proof:

> While *in camera* examinations need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders *in camera* inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. The burden remains on the Government under this law.

S.Conf.Rep.No. 1200, 93d Cong., 2d Sess. 9 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6287–88.

and justified, by means of coded indices,[13] the withholding of information in order to protect the personal privacy of former FBI agents and third parties (Exemption 7(C)) and to protect the identities of and information provided by confidential sources (Exemption 7(D)). Furthermore, as with the CIA and the State Department, the government submitted all of the FBI's documents for *in camera* review. The Lieberman declarations and coded indices, in conjunction with the district court's *in camera* review of the documents, were adequate to meet any requirements under *Vaughn* that the government provide a reasoned justification for its withholdings. *See, e.g., Lykins,* 725 F.2d at 1464 (when "an agency has released most of the contents of a document and has otherwise met its FOIA obligations in good faith, a public statement that the remaining small portions would reveal a confidential source—coupled with *in camera* review of the excised portions of the document ... is sufficient to meet *Vaughn*'s requirements.").

Plaintiff's claim of improper denial of *Vaughn* indices is, therefore, groundless and unsupported.

## B. The Adequacy of the Searches

Plaintiff next contends that the defendant agencies did not conduct adequate searches for responsive documents. Plaintiff directs most of her brief to this argument. However, as with plaintiff's arguments regarding the defendant agencies'

*Vaughn* indices, plaintiff's contentions with respect to the adequacy of the agencies' searches lack merit and, in some instances, ignore agency affidavits that cure deficiencies noted by the district court in earlier affidavits.

■ The adequacy of an agency's search for documents under the FOIA is judged by a standard of reasonableness and depends upon the facts of each case. *E.g., Weisberg v. United States Dept. of Justice,* 745 F.2d 1476, 1485 (D.C.1984). The crucial issue is not whether relevant documents might exist, but whether the agency's search was "reasonably calculated to discover the requested documents." *Safecard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1201 (D.C.Cir.1991).

■ In order to establish the adequacy of its search, the agency may rely upon affidavits provided they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith. *E.g., Miller v. United States Dept. of State,* 779 F.2d 1378, 1383 (8th Cir.1985); *Weisberg,* 745 F.2d at 1485. A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted. *See, e.g., Oglesby v. United States Department of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982). The affidavit should additionally "describe at least generally the structure of the agency's file system which makes further search diffi-

---

**13.** In a "coded" format, an agency breaks down its FOIA exemptions into subcategories, explains the nondisclosure rationale for each subcategory, and then correlates the subcategories to each document or portion withheld. For example, the Lieberman declaration was accompanied by copies of the documents in their redacted form. Next to each redaction was a code designation that corresponds to a FOIA exemption and a subcategory of information. For instance, one of the subcategories for information withheld under Exemption 7(C) was names and initials of FBI agents and support personnel. A coded symbol (b7C–1) would appear next to any deletions that fit within this exemption and subcategory of information. Use of coded indices has been explicitly approved by several circuit courts as long as each deletion is correlated "specifically and unambiguously to the corresponding exemption," and the agency affidavit

places "each document into its historical and investigative context." *See, e.g., Keys v. United States Dept. of Justice,* 830 F.2d 337, 349–50 (D.C.Cir.1987). Use of coded indices is fully consistent with the Supreme Court's endorsement of "workable rules," under which general categories of information may be withheld under certain FOIA exemptions "without regard to individual circumstances." *See United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 779–80, 109 S.Ct. 1468, 1484–85, 103 L.Ed.2d 774 (1989) (upholding use of categorical rules in Exemption 7(C) context). We therefore agree with these circuits that "it is the function, not the form, of the index that is important," and that coded indices can, in some instances, accomplish the functions of *Vaughn* "more efficiently and clearly than would the classical *Vaughn* indices." *Keys,* 830 F.2d at 349.

cult." *Church of Scientology of Cal. v. I.R.S.*, 792 F.2d 146, 151 (D.C.Cir.1986) (Scalia, J.).

■ If an agency fails to establish through reasonably detailed affidavits that its search was reasonable, the FOIA requester may avert summary judgment merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search. *E.g., Weisberg v. United States Dept. of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983). However, if an agency demonstrates that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith. *Miller*, 779 F.2d at 1383. An agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Safecard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)).

■ Plaintiff complains, first, that the FBI, the Customs Service, and the State Department failed to search "alternate spellings" and "files containing the information of cohorts." Plaintiff also charges that unspecified "clues" contained in the four documents released to her by the State Department "might have indicated" other potential repositories of information that the State Department should have searched. Plaintiff's FOIA request, however, was limited to "information pertaining to Robert Thompson." [14] Because the scope of a search is limited by a plaintiff's FOIA request, there is no general requirement that an agency search secondary references or variant spellings. *See Gillin v. IRS*, 980 F.2d 819, 822 (1st Cir.1992) (quoting *Meeropol v. Meese*, 790 F.2d 942, 955 (D.C.Cir.1986)) ("The adequacy of an agency's search 'is measured by the reasonableness of the effort in light of the specific request.'"). Nor is there any requirement

that an agency conduct further searches on the basis of unspecified "clues" in released documents.

■ Second, plaintiff complains that the declarations submitted by the FBI and the CIA were not based on personal knowledge. However, an agency need not submit an affidavit from the employee who actually conducted the search. Instead, an agency may rely on an affidavit of an agency employee responsible for supervising the search. *E.g., Safecard Servs.*, 926 F.2d at 1201; *cf. Weisberg v. United States Dept. of Justice*, 627 F.2d 365, 369 (D.C.Cir.1980) (court holds that affidavit was inadequate because it was not based upon personal knowledge of affiant or anyone else), *appeal on remand*, 705 F.2d 1344 (D.C.Cir.1983). Here, the FBI submitted several declarations of David Lieberman, a supervisor in the FOIA section of the FBI's records division, who reviewed the information in his official capacity. Similarly, the CIA submitted the declarations of John Wright and Katherine Stricker, the persons responsible for directing FOIA searches at the CIA and determining the applicability of FOIA exemptions. These affidavits, although partly secondhand, are sufficient to satisfy the government's burden of submitting affidavits of responsible agency officials.

■ Plaintiff also makes numerous arguments directed at just one of the defendant agencies. With respect to the FBI, plaintiff contends that the FBI improperly limited its search to "105, 106" references, rather than to all references. This argument was first raised in an untimely motion for reconsideration and was denied because it "should have been raised earlier." This court, therefore, reviews the denial only for an abuse of discretion. *E.g., National Metal Finishing Co. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 125 (1st Cir.1990). In any case, plaintiff's argument is contrary to the facts. The FBI submitted a declaration explaining that the

14. Plaintiff sent identical FOIA requests to each defendant agency stating the following: "I am requesting, through the FOIA, any information you may have concerning my former husband, Robert Thompson. He disappeared along with Robert Swanner on a flight over Cuba in December of 1961."

"105, 106" reference was contained on a 1969 FOIA search slip, not plaintiff's 1987 search slip. Consequently, the agency did not limit its search for documents responsive to plaintiff's FOIA request to the "105, 106" reference. The district court clearly did not abuse its discretion in denying plaintiff's motion for reconsideration on the basis of the scope of the FBI's search.

■ With respect to the CIA, plaintiff complains that summary judgment was improper because the CIA's affidavits were not sufficiently detailed to enable plaintiff to challenge the adequacy of the CIA's search. Plaintiff further argues that, in any case, it is clear that the CIA's search was inadequate because a 1963 memorandum released to plaintiff contains a reference to other "records," which have not been disclosed. According to plaintiff, the potential existence of other records with no explanation by the CIA for its failure to produce those other records demonstrates the inadequacy of the CIA's search for responsive documents.

Plaintiff's argument regarding the sufficiency of the CIA's affidavits is unpersuasive. The CIA submitted several public declarations by John H. Wright, its Information and Privacy Coordinator, explaining that the CIA conducted two searches—first, of officially released documents [15] and, second, of the records of the three Directorates where it believed responsive records would be found, including the Directorates of Operations (records of clandestine foreign intelligence and counter intelligence activities), Intelligence (records interpreting important world events), and Administration (records of employees). Wright's declaration of December 7, 1988 sets forth in a very general manner the method by which the CIA retrieves documents.[16] The Wright declaration further

15. The search of officially released documents yielded one responsive document, which was forwarded to plaintiff. This document, a March 20, 1963 memorandum, states that the CIA had no connection with plaintiff's husband or the flight in question.

16. The Wright declaration explains that the CIA's records systems are diverse, decentralized, and compartmentalized in order to enhance security of documents by minimizing accidental disclosure of sensitive information. With respect to the CIA's method of retrieving documents, the declaration states the following:

3. The nature and design of the CIA records systems are determined by the nature of the Agency's intelligence activities and responsibilities. Documents are generally retrievable if they are in a file which contains a collection of documents on the same subject, and the subject is indexed in a system that alerts a searcher to the existence and location of the file, or if the document is individually indexed in a system that alerts a searcher to the document. If information is stored other than on paper, it must be indexed in a manner which alerts the searcher to its existence and location. The manner in which the CIA indexes information for storage and retrieval purposes varies according to the nature of the intelligence activity that the records are intended to support. Our ability to retrieve data from a given records system is determined by what information has been stored in the system and how the system is designed for retrieval purposes.

4. It is crucial to note that the CIA records storage processing and retrieval systems are designed and programmed to respond to the particular *intelligence* responsibilities and problems of the component using the system. For example, a component charged with political analysis of a particular foreign power may organize its files under various subjects—names of prominent politicians, party names, geographical concentrations of power, etc. Another component, with a different intelligence mission, may set up its files in a totally different fashion. Accordingly, the structure of particular records systems are not uniform but, rather, differ according to the intelligence responsibilities of the component maintaining the system. Moreover, some records systems are such an integral part of the associated intelligence activity that the record system necessarily bears the same classification as the intelligence activity....

5. When Privacy Act and FOIA requests are received in the Information Services Division (ISD), the initial reception point for all such requests received by the CIA, a determination is made by experienced personnel in ISD as to what components of the Agency might reasonably be expected to possess records which might be responsive to each request. Copies of the requesting letter are then forwarded to each such component with instructions that a search be made for any responsive documents. This initial step is called "tasking" of the components. Searches are then routinely made among all indices that might logically have any information relating to ... the substance of request under the FOIA. In this regard, it is necessary to understand that the search for records in each individual component is dependent upon the

explains that some of the record systems searched in response to plaintiff's FOIA request are classified.[17] According to Wright, "a detailed discussion would entail the disclosure of classified information, including information revealing intelligence sources and methods." Since public disclosure of additional details about the CIA's structure and its FOIA search here was not possible, the CIA submitted an *in camera* declaration detailing the searches conducted by the CIA for responsive documents. After reviewing the public and *in camera* declarations of Mr. Wright, we are satisfied that the CIA's search was "reasonably calculated to discover the requested documents." *See Safecard Servs.*, 926 F.2d at 1201.

As the CIA has provided relatively detailed affidavits demonstrating the reasonableness of its search, we reject plaintiff's argument regarding the 1963 memorandum's reference to other "records." As the district court noted, the fact a 1963 document refers to the existence of other records does not independently generate an issue of material fact rendering summary judgment improper so long as reasonably detailed, nonconclusory affidavits demonstrate the reasonableness of the agency's search performed in 1990. *See, e.g., Miller*, 779 F.2d at 1385.

▆▆▆ As to the Customs Service, plaintiff contends that summary judgment on the adequacy of the agency's search was improper because (1) the Customs Service improperly limited its search to its automated Treasury Enforcement Communications System ("TECS"); (2) the declarations submitted by the Customs Service are in-

consistent; and (3) the Customs Service did not search possible border crossing records for the period prior to 1982 because it would involve "significant effort."

Plaintiff's first two arguments are interrelated and neither has any merit. The Custodian of Records for all electronic records, Ellen Mulvenna, submitted three separate detailed affidavits explaining the structure of the Customs Service's record systems. Plaintiff suggests that the Mulvenna declarations are inconsistent because the first declaration states that the original TECS records date back to the early 1970's and the second declaration states that all investigatory records, including records in the 1960's, are included in the TECS. Contrary to plaintiff's assertion, these statements appear to be fully consistent. According to the later Mulvenna affidavits, the TECS system was created in 1970. At that time, all existing records were placed in the TECS. Therefore, as explained in the third Mulvenna affidavit, the Customs Service's search was appropriately limited to the TECS system since "[a]ny information on Plaintiff's missing husband that might have been contained in the records of the U.S. Customs Service as of the date that the TECS system was created in 1970 would have been placed in the TECS data system."

Plaintiff's challenge to the adequacy of the Customs Service's search is also unpersuasive. While the government's declarations acknowledged that a search of border crossing data would involve "significant effort," they also made clear that such data only exists for dates after 1976, fifteen years after plaintiff's husband disappeared.

component's unique indexing system. The indices are the source of any clues into the existence and location of responsive records. For example, the indexing systems for records contained in the Directorate of Operations (DO) are not the same as those used in the Office of Security (OS). Therefore, the search for records in each component must be carried out by an individual who has knowledge of that component's indexing system....
The declaration, however, provides no details as to the CIA's search for documents responsive to plaintiff's FOIA request.

**17.** The National Security Act, 50 U.S.C. § 403g, provides in relevant part:

In the interests of the security of the foreign intelligence activities of the United States and in order further to implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from ... the provisions of any other law which requires the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

It would seem reasonable, therefore, not to have searched the border crossing data, quite apart from any special effort involved.

Plaintiff's challenges to the State Department's searches also lack merit. Plaintiff complains that (1) the State Department did not identify who conducted the search or specify the background and experience of that person; (2) the State Department's declaration leaves open the inference that some sources that are only 'likely' to contain information were not searched; and (3) the declaration does not include a "comprehensive listing of 'decentralized record systems.' "

■■■ There is, however, no general requirement for an agency to disclose the identity and background of the actual persons who process FOIA requests. Plaintiff relies on *Weisberg*, 627 F.2d at 371, which reversed a district court's grant of summary judgment because the agency affidavits did not "denote which files were searched or by whom, [did] not reflect any systematic approach to document location, and [did] not provide information specific enough to enable [plaintiff] to challenge the procedures utilized." Plaintiff reads *Weisberg* too broadly. *See Perry*, 684 F.2d at 127 (noting that *Weisberg* "involved rather special facts that tended to cast considerable doubt on the adequacy [of the agency's search]" because "the agency's own assertions supported an inference that specifically identified material, solicited by the requester, might have remained in the agency's possession."). The point of *Weisberg* and subsequent cases is that search methods should be ones reasonably calculated to locate the requested information, assuming it exists. The State Depart-

ment's declaration suffices to demonstrate that its search methods met this standard.[18]

Plaintiff's second argument is that the State Department's declaration "leaves open the inference that some sources that are only 'likely' to contain information were not searched." *See Oglesby*, 920 F.2d at 68 ("agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested"). Plaintiff appears to base this inference upon a letter from the State Department declaring that it searched the two record systems *"most* likely to contain the information" requested. However, a subsequent State Department declaration by its Information and Privacy Coordinator, Frank M. Machak, declared that searches were conducted of all "record systems" that were "likely" to contain the information requested.

■■■ Finally, plaintiff's demand for a "comprehensive listing of 'decentralized records systems' " is also unfounded. "There is no requirement that an agency search every record system." *Oglesby*, 920 F.2d at 68. Nor is there any requirement that an agency provide a comprehensive list of record systems unlikely to contain responsive records. Rather, an agency need only provide "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched," *see, e.g., id.,* as well as a general description of the structure of the agency's file system demonstrating why further search would be overly burdensome, *see Church of Scientology of Cal.,* 792 F.2d at 151. Because the State Department's affidavits fully meet this standard, summary judg-

---

**18.** The State Department's declaration explains that responsive records, "if they existed, would likely be expected to be contained in two records systems, namely: the Central Records; and the Office of Overseas Citizens Services [OCS]." While name searches of two of the three categories of Central Records files (the Automated Document System and the Lot Files) turned up no records, a name search of the "personality cross-reference" to the Central Foreign Policy Files (a third category of Central Records) identified twenty-three responsive documents which

had been sent to the OCS "for action." The OCS retirement manifests along with a document-by-document search revealed that nineteen of these documents "had been destroyed in May, 1979, in accordance with approved disposition schedules," leaving only "four documents responsive to this request [that] were not destroyed." Three of these documents were produced to plaintiff with no excisions, and the fourth was produced with minor excisions based on personal privacy grounds pursuant to FOIA Exemption 6.

ment on the adequacy of the State Department's search was appropriate.[19]

With respect to the DIA's search, plaintiff contends that summary judgement was inappropriate because (1) a document that was forwarded from the FBI to the DIA in 1963 was not located by the DIA in its 1990 search; and (2) the DIA's declaration does not adequately explain the data bases searched or the procedures for information retrieval.

 As to plaintiff's first argument, "the fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it." *Miller,* 779 F.2d at 1385. Thus the failure of the DIA to produce a copy of a document, identified in a 1963 memo, does not mean that the DIA's search in 1990 was inadequate, particularly when the DIA has demonstrated that its 1990 search was reasonably calculated to uncover responsive documents. Plaintiff's second contention also lacks merit. The DIA's declaration adequately explains the two data bases it searched. According to the DIA's declaration, the Central Reference Division of the DIA Directorate for Technical Services and Support "searched its two data bases: the Intelligence Report Index Summary Archive (IRISA) and the All Source Document Index Archive (ASDIA)." IRISA "contains bibliographic references to all·human intelligence information reports held or produced by DIA." ASDIA "contains bibliographic citations to all intelligence studies, contract reports, open source materials maintained in the DIA library." These two data bases, therefore, included all materials maintained by the DIA that were likely to contain responsive documents. A search of these two data bases failed to produce any information pertaining to plaintiff's husband. While

the DIA's declaration could have described the actual search conducted in more detail, any "arguable inadequacy of the search descriptions" is "no more than marginal and does not render the grant of summary judgment inappropriate." *See Perry,* 684 F.2d at 127.

 Finally, plaintiff contends that the INS's search was inadequate because it took seventeen months to locate a responsive file and because the file was lost in 1988 and not found and turned over to plaintiff until after her appeal was taken in 1992. Neither of these arguments is persuasive. Plaintiff's first contention was raised initially in an untimely motion for reconsideration. Therefore, we review the district court's denial of this motion only for abuse of discretion. *See, e.g., National Metal Finishing Co.,* 899 F.2d at 125. Delay in locating a document "is significant only to the extent that evidence shows that the delay resulted from bad faith refusal to cooperate." *Miller,* 779 F.2d at 1386; *accord Perry,* 684 F.2d at 128 (court upholds adequacy of agency search notwithstanding delay of over one and one half years); *Goland,* 607 F.2d at 355 (agency delay, by itself, is not indicative of lack of good faith). Because plaintiff presented no evidence to suggest that the seventeen-month delay resulted from bad faith, the district court properly denied plaintiff's untimely motion for reconsideration.

Plaintiff's second argument fares no better. Essentially, plaintiff argues that the fact that a file was lost and then found undercuts the INS's contention that its search was reasonable. *See Goland,* 607 F.2d at 369–70. In *Goland,* one week after the D.C. Circuit affirmed a district court's conclusion that the CIA had conducted an adequate search, *see* 607 F.2d 339 (D.C.Cir. 1978), the CIA informed the Justice Depart-

---

**19.** Plaintiff also suggests, without further argument or explanation, that the State Department should have searched the records of the "Cuba Desk" and the "Bureau of Politico–Military Affairs." Plaintiff's suggestion seems factually misguided. It appears that the records of the "Cuba Desk" (the formal name for which is apparently the Office of Cuban Affairs in the Bureau of Inter–American Affairs) were

searched. The Bureau of Politico–Military Affairs, on the other hand, is apparently concerned with remote issues such as arms control, nuclear non-proliferation, outer space and the coordination of military-related activities with foreign policy. The records of the Bureau of Politico–Military Affairs, therefore, seem unlikely to contain any responsive documents.

ment that it had discovered additional documents responsive to the plaintiff's FOIA request while the appeal had been pending. Although some of these documents were subsequently released to the plaintiff, the plaintiff sought to have the D.C. Circuit reconsider its opinion as to the adequacy of the CIA's search, arguing that the discovery of additional documents undercut the finding that the search had been reasonable. The D.C. Circuit rejected the argument, stating that "[t]he issue was not whether any further documents might conceivably exist but whether [the agency's] search for responsive documents was adequate." 607 F.2d at 369–70. Although the court noted that the discovery of additional documents may be evidence that a search is not thorough, the court was satisfied that "the original failure to uncover the documents was wholly understandable and not inconsistent with the district court's finding that the search was thorough." *Id.* at 370, 372; *see also Miller*, 779 F.2d at 1386 (discovery of additional documents is not conclusive of agency bad faith since belated discovery may result merely from administrative inefficiency or reluctant diligence on the part of the agency); *Perry*, 684 F.2d at 128 (discovery of additional documents indicated "neither artifice nor subterfuge but rather, at worse (sic), administrative inefficiency.").

■ Similarly here, the INS submitted a declaration to the district court, explaining that the three-page document responsive to plaintiff's FOIA request was lost in transit from the Federal Records Center in Atlanta to the INS Central Office in Washington, D.C. More important, the INS submitted an additional declaration detailing the extensive steps taken by the INS to locate the missing file, including computer and manual shelf-by-shelf searches. In light of the detailed affidavits demonstrating the adequacy of the INS's initial search and the subsequent search for the missing

file, we are not persuaded that the district court was incorrect in concluding that the searches were reasonable and in good faith. Instead, the agency's initial inability to find the missing file appears to be the result of administrative inefficiency. Nor can we say that the agency's subsequent discovery and release of the lost file impugns the integrity of the INS's affidavits. Rather than bad faith, we think the forthright disclosure by the INS that it had located the misplaced file suggests good faith on the part of the agency. *See Meeropol*, 790 F.2d at 953 ("what is expected of a law-abiding agency is that it admit and correct error when error is revealed.").

In sum, we are satisfied, as was the district court, that each defendant agency presented reasonably detailed, nonconclusory affidavits demonstrating the reasonableness of their respective searches. We reject plaintiff's suggestion that the agencies' affidavits were insufficient to support summary judgment on the issue of the adequacy of the agencies' searches.

## C. FOIA Exemptions

Plaintiff contends that the district court improperly upheld the FBI's withholding of information under FOIA Exemption 6 and asks us to join all other defendants in this argument. Exemption 6 permits withholding of the following:

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6).

It is not surprising that plaintiff was unable to find any justification under Exemption 6 for the FBI's excisions since the FBI did not claim Exemption 6 as the basis of its withholding. Rather, it claimed Exemption 7(C),[20] which permits the withholding of

---

**20.** The FBI additionally relied on FOIA Exemption 7(D) to justify certain withholdings. *See* 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) provides protection for confidential source information. *See, e.g., Providence Journal Co. v. United States Dept. of Army*, 981 F.2d 552, 563 (1st Cir.1992). As plaintiff has failed to present any argumentation with respect to Exemption 7(D), she has waived any claims of error regarding this exemption. *See, e.g., Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir.1992).

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7)(C).

 In analyzing Exemption 7(C) claims, courts balance "privacy" interests against any "public interest" in disclosure. *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 1475, 103 L.Ed.2d 774 (1989). The FBI asserted three interests warranting privacy protection: (1) the names and initials of low-level FBI agents and support personnel; (2) the names and identifying data of third parties interviewed in the course of the FBI's investigation; and (3) the names and identifying data of third parties mentioned as subjects of the FBI's investigation. The FBI's declaration details the potential for harassment, reprisal or embarrassment if this information is disclosed. FBI agents, support personnel, confidential sources, and investigatory targets all have significant privacy interests in not having their names revealed. *New England Apple Council v. Donovan*, 725 F.2d 139, 142 (1st Cir.1984) (career public servants); *Safecard*, 926 F.2d at 1205 (investigatory targets); *Fitzgibbon*, 911 F.2d at 767 (suspects, witnesses, and investigators all have strong privacy interest "in not being associated unwarrantedly with alleged criminal activity.").

The Supreme Court recently held that the only cognizable "public interest" for purposes of FOIA is "the citizens' right to be informed about 'what their government is up to.'" *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481. "That purpose ... is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an

agency's own conduct." *Id.; Federal Labor Relations Auth. (FLRA) v. United States Dept. of Navy*, 941 F.2d 49, 57 (1st Cir.1991) ("[w]hatever non-zero privacy interest at stake, under *Reporters Committee*, that interest cannot be outweighed by a public interest in disclosure—whatever its weight or significance—that falls outside of the FOIA-cognizable public interest in permitting the people to know what their government is up to."); *cf. Providence Journal Co. v. United States Dept. of Army*, 981 F.2d 552, 568 (1st Cir.1992) (public has interest in disclosure of governmental misconduct by high ranking agency officials).

 Plaintiff here has failed to suggest how the disclosure of the names would reveal what the government is up to. We need not, therefore, dwell upon the balance between privacy and public interests: "something ... outweighs nothing every time." [21] *Fitzgibbon*, 911 F.2d at 768 (quoting *NARFE v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989), *cert. denied sub nom. NARFE v. Newman*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990)). Accordingly, plaintiff's claim for disclosure fails under Exemption 7(C).

Plaintiff's claim for disclosure fits no better within Exemption 6. The only agency actually to rely on Exemption 6 for any withholdings is the State Department. In its declaration, the State Department explained that it had withheld the names and other identifying information (*i.e.*, date and place of birth, address and occupation), because disclosure could subject individuals or their families to harassment or embarrassment, and the public interest in disclosure, if any, was minimal. This characterization seems entirely justified.

 As with Exemption 7(C), courts must balance the relative privacy and public interests to determine whether information is properly withheld under Exemption

---

**21.** For the same reason, the effect of the passage of time upon the individual's privacy interests is simply irrelevant when a FOIA requestor is unable to suggest any public interest in the disclosure of names that would reveal what the government is up to. Privacy interests, no matter

how minimal, will outweigh a nonexistent public interest. We therefore reject plaintiff's suggestion that the FBI should have considered "the mitigation of time" on documents over twenty-five years old.

6. Although "the Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to Exemption 7(C)," *United States Dept. of State v. Ray,* —— U.S. ——, ——, 112 S.Ct. 541, 546, 116 L.Ed.2d 526 (1991) (citing *Reporters Committee,* 489 U.S. at 756, 109 S.Ct. at 1472), the teachings of *Reporters Committee* with regard to the public interest side of the equation apply equally in the Exemption 6 context, *see id.* —— U.S. at ——, 112 S.Ct. at 549; *FLRA,* 941 F.2d at 56. Therefore, any inquiry into the public interest in disclosure of withheld information must focus "on the citizens' right to be informed 'about what their government is up to.'" *Id.* (quoting *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481). Because plaintiff has failed to point out how the withheld information would reveal anything significant about the State Department's "performance of its statutory duties," *id.* (quoting *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481), and because the State Department has asserted a legitimate privacy interest in withholding names and other identifying information, we hold under the teachings of *Ray* and *Reporters Committee* that disclosure would be a "clearly unwarranted invasion of personal privacy." Accordingly, the information was properly withheld under the FOIA Exemption 6.[22]

### D. Discovery

■ Plaintiff contends that the district court improperly granted protective orders barring certain interrogatories and a proposed deposition of Dr. Orlando Bosch–Avila, an individual incarcerated in federal prison in Miami.[23] Neither claim warrants appellate intervention into the district court's broad discretion in managing pretrial discovery. Intervention would be warranted "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Mack v. Great Atlantic & Pacific Tea Co.,* 871 F.2d 179, 186 (1st Cir.1989). Examination into the facts relative to the protective orders does not reveal "manifest injustice."

■ Plaintiff's barred interrogatories were served approximately six months after the discovery deadline had lapsed. Plaintiff did not present any compelling reason for having ignored the deadline. With respect to the deposition of Dr. Bosch–Avila, the government moved for a protective order barring the deposition until plaintiff obtained the consent of Dr. Bosch–Avila, a federal prisoner, and gave advance notice to government counsel. The district court granted the motion "without prejudice to the deposition of the subject being noticed with at least 10 days notice to defense counsel." Plaintiff did not seek to depose Dr. Bosch–Avila at any later date. It thus appears that plaintiff's failure to obtain the discovery in issue was the result, in large part, of her own inaction. The district court did not abuse its discretion in ruling as it did.

### E. Attorney's Fees

■ Plaintiff contends that the district court erred in not awarding her attorney's fees. A decision as to whether to award attorney's fees is a matter within the sound discretion of a trial court and will be reversed only for an abuse of that discretion.

---

22. Because plaintiff does not challenge any of the other bases for withholdings asserted by the government, plaintiff has waived any claims concerning other FOIA exemptions. *E.g., Playboy Enterprises, Inc. v. Public Serv. Comm'n,* 906 F.2d 25, 40–41 (1st Cir.), *cert. denied sub nom. Cruz v. Playboy Enterprises, Inc.,* 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990).

23. In support of her motion to take the deposition of Dr. Bosch–Avila, plaintiff submitted the affidavit of Sherry Ann Sullivan. Ms. Sullivan, a private investigator who is also the head of "The Forgotten Families of the CIA," had brought a similar FOIA suit to plaintiff's. In her affidavit, Sullivan alleged that a confidential informant had personal knowledge that Dr. Bosch–Avila had worked with both Robert Thompson and her father, Geoffrey Sullivan, on CIA-sponsored projects. Ms. Sullivan further alleged that the testimony of Dr. Bosch–Avila would be "sufficient for the CIA to locate the information and documents which have been requested by Plaintiff and which the C.I.A. says it cannot locate."

*Aronson v. HUD*, 866 F.2d 1, 2, 4 (1st Cir.1989).

■ Under the FOIA, a district court may award attorney's fees and costs to a plaintiff who has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E). In determining whether a plaintiff has "substantially prevailed" within the meaning of 5 U.S.C. § 552(a)(4)(E), a district court must conduct a two-step inquiry. First, did plaintiff "substantially prevail"? Second, if so, is plaintiff entitled to an award based on a balancing of equitable factors? *Crooker v. United States Parole Comm'n*, 776 F.2d 366, 367 (1st Cir.1985).[24]

■ The district court in this case denied plaintiff's motion for attorney's fees against all of the defendant agencies, with the exception of the CIA,[25] on the basis of the first inquiry—i.e., plaintiff had not substantially prevailed against any of the defendant agencies. This conclusion was entirely correct. In order to prove that a plaintiff substantially prevailed, a plaintiff must establish that the filing of the litigation was "necessary" and "had a causative effect on the disclosure of the requested information." *Crooker v. United States Dept. of Justice*, 632 F.2d 916, 932 (1st Cir.1980) (citing *Vermont Low Income Advocacy Council, Inc. (VLIAC) v. Usery*, 546 F.2d 509, 513 (2d Cir.1976)). At the time that the district court ruled on the attorney's fee question, plaintiff's suit had resulted in the disclosure of no documents from the DIA, the Customs Service, or the INS. The district court therefore was clearly justified in denying attorney's fees as to these defendant agencies. Although the INS subsequently found and delivered a lost document, there is no showing that the suit was the cause of the delivery of this document. We see no reason, therefore, to disturb the district court's finding

that plaintiff did not substantially prevail against the INS. *See Weisberg v. United States Dept. of Justice*, 848 F.2d 1265, 1271 (D.C.Cir.1988); *VLIAC*, 546 F.2d at 514–15 (FOIA requester did not substantially prevail despite fact that agency lost document and did not relocate it until after litigation was filed).

■ Nor do we fault the district court's conclusion that plaintiff did not substantially prevail against either the State Department or the FBI. Both agencies produced documents to plaintiff after suit was filed. The chronology, by itself however, is not determinative. *E.g., Cazalas v. United States Dept. of Justice*, 660 F.2d 612, 619 (5th Cir.1981) ("the mere fact that the documents requested were not released until after the suit was instituted, without more, is not enough to establish that a complainant has substantially prevailed."); *Cox v. United States Dept. of Justice*, 601 F.2d 1, 6 (D.C.Cir.1979) (accord). With the exception of a single name which the district court ordered the FBI to disclose, plaintiff presented no evidence suggesting that this litigation was necessary to obtain requested information or that the litigation caused the agency to produce the information. *E.g., Crooker*, 632 F.2d at 922. Moreover, as the district court recognized, the disclosure of a single name was of minimal importance when compared with plaintiff's overall FOIA request. *E.g., Union of Concerned Scientists v. United States Nuclear Regulatory Comm'n*, 824 F.2d 1219, 1226 (D.C.Cir.1987); *Chilivis v. SEC*, 673 F.2d 1205, 1213 (11th Cir.1982). Accordingly, there was no abuse of discretion in the court's finding that plaintiff did not substantially prevail against the FBI.

Plaintiff argues that this suit resulted in progressively greater disclosure from the

---

**24.** These factors include the following: "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Aronson*, 866 F.2d at 3 (quoting *Crooker*, 776 F.2d at 367); *see also* S.Conf.Rep.No. 1200, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267,

6285, 6288 (indicating that Congress intended courts to consider these factors in determining whether to exercise their discretion to award attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E)).

**25.** The district court decided to await resolution of the CIA's appeal before deciding the issue of attorney's fees as to the CIA.

FBI, thus meeting the causation requirement in 5 U.S.C. § 552(a)(4)(E). According to plaintiff, after initiation of the litigation, she was provided with material that had previously been redacted. This argument, however, was raised for the first time in an untimely motion for reconsideration, which the district court properly denied. The FBI submitted an affidavit explaining that the release of the great bulk of the redacted material was the result of inter-agency process, not this litigation, and the release of the remainder of the previously redacted material occurred after the agency became aware that the material had previously been released to another individual (thereby requiring its release to plaintiff). The district court was within its discretion in concluding that plaintiff had not substantially prevailed, and did not abuse its discretion by refusing to reconsider this decision.

## II.

The district court's order of November 14, 1990 compelling the CIA to disclose the third full paragraph on page 2 of the December 22, 1961 memorandum is *reversed*.

The district court's subsequent orders granting summary judgment to the CIA, the FBI, the State Department, the Customs Service, the INS, and the DIA, as well as its decision not to award attorney's fees, are all *affirmed*.

*So ordered. Costs to appellees* in No. 92–1615 and to appellant in No. 91–1334.