**State of MAINE, Plaintiff**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, United States Geological Survey, United States Fish and Wildlife Service, United States Department of Commerce, and National Marine Fisheries Service, Defendants**

**No. CIV. 00–122–B–C.**

United States District Court,
D. Maine.

Dec. 26, 2000.

Order Amending Opinion,
Jan. 2, 2001.

Christopher C. Taub, Asst Atty General, Augusta, ME, for State of Maine, plaintiff.

Halsey B. Frank, Office of the U.S. Attorney, Portland, OR, for U.S. Dept. of Interior, U.S. Geological Survey, U.S. Fish and Wildlife Service, U.S. Dept. of Commerce, National Marine Fisheries Service, defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This case involves a dispute between Plaintiff, the State of Maine, and Defendants, United States Department of the Interior ("DOI"), United States Geological Survey ("USGS"), United States Fish and Wildlife Service ("USFWS"), United States Department of Commerce ("DOC"), and National Marine Fisheries Service ("NMFS"), over Defendants' obligation under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to disclose information regarding a proposal by Defendants USFWS and NMFS (collectively "the Services") to list the Atlantic salmon populations in eight Maine rivers as a discrete population segment eligible for protection under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1543. Now before the Court are Defendants' Motion for Partial Summary Judgment ("Defendants' Motion for Summary Judgment") (Docket No. 14) with respect to Counts II and III of Plaintiff's Complaint, and (Plaintiff's Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Partial Summary Judgment) ("Plaintiff's Motion for Summary Judgment") (Docket No. 15) with respect to these same counts. For the reasons discussed below, the Court will order immediate disclosure of some of the requested documents, deem other documents exempt

from disclosure under the FOIA, and review, *in camera,* the remaining documents to assess the segregability of nonexempt information.

## BACKGROUND

Relevant to the motions now before the Court are Counts II and III of Plaintiff's Complaint (Docket No. 1). These counts concern a FOIA request served by Plaintiff upon Defendants on January, 18, 2000.[1] *See* Plaintiff's Statement of Material Facts ("PSMF") (Docket No. 16) ¶ 3; January 18, 2000, FOIA Request, Defendants' Statement of Material Facts ("DSMF") (Docket No. 13), Exhibit 3. In this request, Plaintiff sought, among other items, documents, data, studies, and correspondence pertaining to Defendants' decision to list as endangered the Atlantic salmon population in eight Maine rivers. *See id.* In a series of letters between February 25, 2000, and March 3, 2000, Defendants DOI, USFWS, and USGS (collectively "the DOI Defendants") partially denied this request, providing Plaintiff with 1,416 documents of 1,724 documents deemed responsive to Plaintiff's January 18 FOIA request. *See* PSMF ¶ 4; DSMF ¶¶ 5–8. Plaintiff administratively appealed this denial to DOI by letter dated March 21, 2000. *See* PSMF ¶ 6; DSMF ¶ 9; March 21, 2000, Letter from Christopher Taub to United States Department of the Interior, DSMF, Exhibit 4, Attachment F. DOI denied this appeal by letter dated April 19, 2000. *See* PSMF ¶ 7; DSMF ¶ 10; April 19, 2000, Letter from William W. Wolf to Christopher Taub, DSMF, Exhibit 4, Attachment G. Defendants DOC and NMFS (collectively "the DOC Defendants") initially did not respond to Plaintiff's January 18 FOIA request. *See* PSMF ¶ 4.

Plaintiff filed this lawsuit on June 13, 2000. *See* Complaint. Count II alleges that the DOC Defendants have failed to respond to Plaintiff's January 18 FOIA request. Count III alleges that the DOI Defendants have improperly withheld 307 files from their response to this request.[2] With respect to these allegations, Plaintiff has prayed for a finding that Defendants are in violation of the FOIA and an order requiring the prompt production of these files.

Since the filing of this lawsuit, the DOI Defendants have subsequently released two of the initially withheld documents. *See* DSMF ¶ 14. The DOC Defendants also took action after the filing of this lawsuit, formally recognizing Plaintiff's January 18, 2000, FOIA request on April 5, 2000, by stating that they would respond to Plaintiff's request "in the near future." April 5, 2000, Letter from Penelope D. Dalton to Christopher Taub, DSMF, Exhibit 5; DSMF ¶ 4; DSMF ¶ 11. On July 10, 2000, NMFS did respond to the request, providing Plaintiff with documents deemed responsive to the request and advising Plaintiff of its decision to withhold twenty-three documents pursuant to various FOIA exemptions. *See* July 10, 2000, Letter from Penelope D. Dalton to Christopher Taub, DSMF, Exhibit 6; PSMF ¶ 11; DSMF ¶ 12. On August 25, 2000, DOC released the portions of two of these documents that it deemed nonexempt under the FOIA. *See* DSMF ¶ 13.

## DISCUSSION

In their Motion for Summary Judgment, Defendants contend that all of the documents withheld are exempt from FOIA

---

**1.** By contrast, Count I of Plaintiff's Complaint concerns a FOIA request served upon Defendants on December 21, 1999. *See* Complaint ¶ 61.

**2.** Although the DOI Defendants' Vaughn index refers to 308 Documents, two of these documents, Document 288 and 290, are identified as having been released. If the DOI

Defendants have not released these documents, they must do so, for they have neither claimed nor established the applicability of a FOIA exemption to justify the withholding of these documents. Defendant does not assert any privilege to support its withholding of Document 258, and the Court will therefore order its disclosure.

disclosure under 5 U.S.C. § 552(b)(5) ("Exemption 5") and 5 U.S.C. § 552(b)(6) ("Exemption 6"). Specifically, the DOI Defendants claim that Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not otherwise be available by law to a party other than an agency in litigation with the agency," encompasses the attorney-client privilege and the work product privilege, and that these privileges justify the withholding of 303 documents.[3] Additionally, the DOI Defendants claim Exemption 6, which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy," to justify the withholding of two documents.[4] The DOC Defendants also invoke Exemption 5 as a ground for withholding documents from Plaintiff, claiming that this exemption encompasses the deliberative process privilege, and that this privilege justifies the withholding of all twenty-three documents. The DOC Defendants additionally claim the attorney-client and/or work product privileges as grounds for withholding eight documents. Defendants maintain that because the requested documents fall under these exemptions to the FOIA, the Court does not have subject matter jurisdiction to require their disclosure and should, therefore, grant summary judgment in favor of Defendants. Both sets of Defendants have filed indices itemizing the various documents that have been withheld, summarizing the contents of each document, and listing the FOIA exemptions applicable to each document; the Court will refer to these indices as "Vaughn indices" for the purposes of this motion. *See* Interior Vaughn Index, DSMF, Exhibit 4, Attachment H; Commerce Vaughn Index, DSMF, Exhibit 9, Attachment A.[5]

Plaintiff challenges Defendants' Motion to Dismiss on a number of grounds. With respect to the DOI Defendants, Plaintiff first contends that the Vaughn index submitted in support of their exemption claims is insufficiently detailed to allow either Plaintiff the opportunity to challenge or the Court the ability to evaluate the applicability of Defendants' claimed exemptions. Alternatively, using the information that the DOI Defendants have provided in their Vaughn index, Plaintiff argues that these Defendants have failed to establish either the attorney-client privilege as a ground for withholding any of the 186 documents claimed exempt under this privilege or the work product privilege as a ground for withholding any of the 254 documents claimed exempt under this privilege. Plaintiff maintains that, in these ways, the DOI Defendants have failed to sustain their burden of establishing a FOIA exemption, and that the Court should, therefore, grant summary judgment in favor of Plaintiff and order the immediate production of all documents withheld by these Defendants under these claimed privileges. Plaintiff does not challenge the DOI Defendants' invocation of FOIA Exemption 6 as a ground for with-

3. The DOI Defendants claim the attorney-client privilege alone as a ground for withholding forty-nine documents, the attorney work product privilege alone as a ground for withholding 117 documents. For 137 documents, the DOI Defendants claim both the attorney-client privilege and the attorney work product privilege as grounds for exemption. *See* DOI Defendants' Vaughn Index.

4. These documents are identified as Documents 1 and 40 in the Vaughn index submitted by the DOI Defendants. *See* DOI Defendants' Vaughn Index.

5. The use of the term "Vaughn index" to describe the indices used by Defendants in their attempt to support their claims of FOIA exemptions is consistent with the general practice of naming such indices after the decision by the Court of Appeals for the District of Columbia in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). *See, e.g., Church of Scientology v. U.S. Dep't of Justice*, 30 F.3d 224, 228 (1st Cir.1994); *Maynard v. CIA*, 986 F.2d 547, 556 (1st Cir.1993); *Hinton v. Dep't of Justice*, 844 F.2d 126, 128 (3d Cir.1988).

holding two documents.[6] Plaintiff does not challenge the adequacy of the Vaughn index submitted by the DOC Defendants or the applicability of the claimed privileges with regard to seventeen of the withheld documents, but does challenge the complete withholding of six documents under the deliberative process privilege. Plaintiff contends that five of these documents appear to contain some nonexempt factual information and that Defendants have not demonstrated why this information is not segregable from the privileged information. Plaintiff requests that the Court conduct an *in camera* review of these five documents to determine whether they contain segregable nonprivileged information. Plaintiff challenges the withholding of the other document on the ground that it does not reflect a permissible deliberation under the ESA.

In reply, the DOI Defendants maintain that their Vaughn index contains sufficient details for the effective evaluation of their claims of exemption and that the information they have provided in this index and their supporting affidavits does fulfill their burden of proof. They also argue that, should the Court decide that their Vaughn index lacks sufficient detail, the proper procedure is to order the Defendants to supplement the index rather than to order disclosure of the documents. The DOC Defendants maintain the applicability of the deliberative process privilege and oppose the use of *in camera* review, arguing that its index makes resort to this measure unnecessary. In addition to this reply, Defendants have also filed a motion opposing Plaintiff's Cross–Motion for Summary Judgment and a responsive statement of material facts. However, these opposition papers were untimely filed.

## I. DEFENDANTS' UNTIMELY RESPONSE

As a preliminary matter, the Court must decide whether to consider Defendants' untimely filed Opposition to Plaintiff's Cross Motion for Summary Judgment (Docket No. 21) and Response to Plaintiff's Statement of Material Facts (Docket No. 20). Defendants filed these papers on November 13, 2000, seven calendar days after the deadline prescribed by Federal Rule of Civil Procedure 6(a) and Local Rules 6 and 7(b).[7] Defendants move the Court to consider these untimely filed papers, asserting excusable neglect under Federal Rule of Civil Procedure 6(b) and Federal Rule of Civil Procedure 55(e)'s limitation of the entry of default judgments against the United States or its agencies, in support of this motion. The Court declines to exercise its discretion to consider Defendants' untimely filed papers under Rule 6(b), and holds that Rule 55(e) does not mandate a different result.

■■■ Rule 6(b) allows a court discretion to extend a filing time upon motion made after the expiration of allotted time "for cause shown" when "the failure to act was the result of excusable neglect." FED. R. CIV. P. 6(b). A court's determination of whether a party's neglect is excusable "is at bottom an equitable one"

---

6. Plaintiff states only that the DOI defendants "rely upon only the attorney-client and attorney work product privileges." Plaintiff's Motion for Summary Judgment at 9.

7. Defendants' responsive motion was due on November 6, 2000. Plaintiff filed its Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Summary Judgment (Docket No. 21) and its accompanying Statement of Material Facts (Docket No. 16) on October 20, 2000. Local Rule 7(b) provides that "[u]nless filed within 10 days after the filing of a motion, the opposing party files written objection thereto ... the opposing party shall be deemed to have waived objection." Accounting for Rule 6(a)'s day counting procedures and omission of holidays and weekends "when the period of time prescribed or allowed is less than 11 days," FED. R. CIV. P. 6(a), as well as Local Rule 6's mandatory addition of three calendar days to account for service of process by mail, Defendants' papers were due on November 6, 2000. Indeed, the Court's on-line docket sheet lists November 6, 2000, as the due date for Defendants' responsive motion.

and "tak[es] account of all relevant circumstances surrounding the party's omission." *Pioneer Investment Services v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993) (discussing the excusable neglect standard under Bankruptcy Rule 9006(b)(1) and describing the rule as "patterned after Rule 6(b)"). Four factors inform a court's decision as to whether excusable neglect allows the exercise of this discretion: "the danger of prejudice [to the party opposing consideration], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id. See Pratt v. Philbrook,* 109 F.3d 18, 19 (1st Cir.1997) ("By construing 'excusable neglect,' a phrase used throughout the Federal Civil, Criminal, and Appellate Rules of Procedure, *Pioneer* must be understood to provide guidance outside the bankruptcy context."). Plaintiff does not discuss these factors in its motion, instead cataloging examples of situations in which courts have declined to find excusable neglect. While Defendants accurately contend that Plaintiff has not claimed prejudice and that the late motion is unlikely to disrupt the proceedings, they do not put forth any excuse whatsoever for their late filings, stating only that "defense counsel is not certain exactly how he miscalculated the time, and did not realize his error until Plaintiff's counsel mentioned it during a phone conversation on November 14, 2000." Reply in Support of Defendants' Motion to File Out of Time (Docket No. 26) at 2.

The excusable neglect standard takes all relevant circumstances into account, but it does not relieve a defendant from setting forth some reason for the delay. *See, e.g., Mirpuri v. ACT Manufacturing,* 212 F.3d 624, 631 (1st Cir.2000) (declining to find that party's implausible misreading of the rules and mistaking reliance on telephone docket constituted excusable neglect); *Mattson v. Brown University,* 925 F.2d

529, 532 (1st Cir.1991) (instructing district court that "mistaken reliance on Rule 6(e) could not be excusable neglect" because "[s]uch a loose approach would open the gates"). Indeed, reason for delay is explicitly identified as one of the factors in the Supreme Court's standard for determining excusable neglect, and at least one Circuit Court of Appeals has identified this factor as the most important factor in the determination. *See Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir. 2000). Hence, Defendants' counsel's profession that he does not know how he miscalculated the date fails to convince the Court that Defendants' neglect is excusable within the meaning of Rule 6(b).

■ Consideration of Rule 55(e) does not change the Court's decision. Rule 55(e) forbids a court from entering a "judgment by default against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the Court." FED. R. CIV. P. 55(e). This rule is inapposite to the decision at issue, because the Court's decision not to consider the arguments raised in Defendants' late-filed papers will not result in a default judgment. Plaintiff does not make clear in its Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Partial Summary Judgment which arguments it intends to oppose Defendants' motion and which arguments it intends to support its own motion; however, its opposition and motion both appear to rest on the same grounds. Because the FOIA requires disclosure of documents responsive to a request unless they fall into one of the FOIA's exceptions, *see United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 150–51, 109 S.Ct. 2841, 2851, 106 L.Ed.2d 112 (1989), each argument that Plaintiff sets forth in opposition to Defendants' motion to withhold a document under a FOIA exception also supports Plaintiff's argument that the FOIA requires disclosure of a document. Defendants themselves cite to the great degree

of overlap between their Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and their Opposition to Plaintiff's Cross–Motion for Summary Judgment. *See* Reply in Support of Defendants' Motion to File Out of Time (Docket No. 26) at 4. Due to the seemingly complete overlap between the arguments raised in support of Plaintiff's Cross–Motion for Summary Judgment and its Opposition to Defendants' Motion for Summary Judgment, any holding that the Court will issue in favor of Plaintiff will rest on the merits of the claim rather than an entry of a default judgment. Hence, Rule 55(e) does not require the Court to accept Defendants' untimely motion.

## II. THE RESOLUTON OF FOIA CASES ON MOTIONS FOR SUMMARY JUDGMENT

The FOIA provides for the automatic public availability of certain agency records, *see* 5 U.S.C. § 552(a)(1), (2), as well as the "prompt availability" of other agency records in response to a "request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules." 5 U.S .C. § 552(a)(3). Under the FOIA, a district court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld" from a FOIA complainant. 5 U.S.C. § 552(a)(4)(B). The exemptions to the FOIA, enumerated in 5 U.S.C. § 552(b), define the meaning of the term "improper"; if an agency record does not fall within any of these exemptions, its withholding is deemed improper for the purpose of a FOIA action. *See Tax Analysts,* 492 U.S. at 150–51, 109 S.Ct. at 2851. However, if a court determines that a document does fall within one of these exemptions, the record is not improperly withheld, and the court does not have subject matter jurisdiction to enjoin the withholding of the document. *See* 5 U.S.C. § 552(a)(4)(B); *NLRB v. Sears, Roebuck, & Co.,* 421 U.S. 132, 147–48, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). In

such cases, a court must dismiss a claim requesting disclosure of that document. *See id.*

The FOIA's statutory scheme serves the "basic purpose" of " 'ensur[ing] an informed citizenry, vital to the functioning of a democratic society' " and " 'open[ing] agency action to the light of public scrutiny.' " *Church of Scientology v. United States Dep't of Justice,* 30 F.3d 224, 228 (1st Cir.1994) (citing *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978); *Dep't of Justice v. Reporters Committee for Freedom of Press,* 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989)). To fulfill this purpose, the FOIA is "[w]ithout question, ... broadly conceived," *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973), and its exemptions are "narrowly construed." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). *See also Church of Scientology,* 30 F.3d at 228 (citing *Aronson v. IRS,* 973 F.2d 962, 966 (1st Cir.1992)); *Gov't Land Bank v. General Services Admin.,* 671 F.2d 663, 665 (1st Cir.1982). Consistent with the FOIA's policy of disclosure, the defendant agency in a FOIA action bears the burden of proving the applicability of a claimed exemption. *See* 5 U.S.C. § 552(a)(4)(B); *Church of Scientology,* 30 F.3d at 228; *Maynard v. CIA,* 986 F.2d 547, 557–58 (1st Cir.1993). When faced with a FOIA claim, a district court makes a *de novo* determination of the validity of an agency's claim of exemption, and it should resolve any doubts it has over the exemption claim " 'in favor of openness.' " *Providence Journal Company v. United States Dep't of the Army,* 981 F.2d 552, 557 (1st Cir.1992) (citing *Irons v. FBI,* 811 F.2d 681, 685 (1st Cir.1987)). *See also Church of Scientology,* 30 F.3d at 228. An agency's burden of establishing a FOIA exemption is significant, and conclusory assertions of privilege by a defendant agency regarding an exemption claim will

not fulfill its burden of proof in a FOIA action. *See Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980). Because "the focus in the FOIA is on information, not documents," even when a defendant agency has established that certain information within a document falls within a FOIA exemption, the agency must also establish that the document does not contain nonexempt information that can be segregated from the exempt information. *Mead Data,* 566 F.2d at 260–61. *See also Church of Scientology,* 30 F.3d at 231, 236.

 Paper proceedings often serve as the mechanism for resolving FOIA cases. *See Miscavige v. IRS,* 2 F.3d 366, 369 (11st Cir.1993). In such proceedings, a defendant agency may attempt to sustain its burden of proving exemptions by submitting a "Vaughn index" that itemizes and describes the information withheld, correlates the FOIA exemption claimed to justify its withholding, and explains why the exemption justifies the withholding of the information. *See Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Church of Scientology,* 30 F.3d at 228; *Maynard,* 986 F.2d at 556. The use of the Vaughn index recognizes the adversarial inequities created by the Defendant agency's exclusive knowledge of the information withheld and serves to ensure that the agency carefully analyzes its· decision to withhold information under FOIA exemptions, enable fulfillment of the trial court's duty to conduct a *de novo* ruling on the applicability of exemptions, and promote the smooth operation of the adversarial system "by giving the requester as much information as possible" to present a case for disclosure to the trial court. *Maynard,* 986 F.2d at 556. *See also Hinton v. Dep't of Justice,* 844 F.2d 126, 128 (3d Cir.1988); *Vaughn,* 484 F.2d at 824–27. Despite the wide use of Vaughn indices in FOIA proceedings, Vaughn indices serve as a means to the resolution of a FOIA case rather than as

ends in themselves, and the resolution of a FOIA case does not necessarily require an agency's submission of a Vaughn index. *See Minier v. CIA,* 88 F.3d 796, 804 (9th Cir.1996); *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 74 (2d Cir. 1981). Moreover, no set formula governs the sufficiency of a Vaughn index, and the key question in determining the sufficiency of an index is whether it allows for meaningful challenge by a FOIA plaintiff and *de novo* review by the district court of an agency's claim of exemption. *See Church of Scientology,* 30 F.3d at 231; *Hinton,* 844 F.2d at 129. The level of specificity required in an agency's description of documents and explanation of the applicability of exemptions will vary depending on the nature of the information, the length of the document, and the exemption claimed. *See Church of Scientology,* 30 F.3d at 234, 237 n. 21. In determining the required specificity of a Vaughn index, a court should keep in mind that despite a defendant's burden of proof with regards to the FOIA exemptions, "the government is not expected to provide so much detail in its supporting materials that it risks compromising the very interests it is seeking to protect." *See id.*

 When an agency has failed to provide sufficient detail in its Vaughn index and/or affidavits in support of its claim of exemption and nonsegregability, a district court may require supplementation of the Vaughn index, conduct an *in camera* review of the documents in question, authorize limited discovery, or order immediate disclosure of the documents. *See Church of Scientology,* 30 F.3d at 239–40 (vacating district court's decision because of reliance on inadequate Vaughn index, remanding case, and suggesting options); 5 U.S.C. § 552(a)(4)(B) (providing that a court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth"); *Maynard,* 986 F.2d at 557 ("Where, as here, the agency, for good

reason, does not furnish publicly the kind of detail required for a· satisfactory Vaughn index, a district court may review documents in camera."). While the option of *in camera* review allows a district court to fully examine the documents in question to determine the applicability of a FOIA exemption, it has the potential of consuming a great deal of judicial resources without yielding the same level of scrutiny that would come from a party actively seeking disclosure of the documents. *See Maynard,* 986 F.2d at 558 (explaining that " 'where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough job of illumination and characterization as would a party interested in the case' ") (citing *Vaughn,* 484 F.2d at 825). Therefore, courts have advised the sparing use of this procedure, particularly in cases in which withheld documents are long and numerous. *See Robbins Tire & Rubber Co.,* 437 U.S. at 224, 98 S.Ct. at 2318 ("The in camera review provision is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved."); *Mink,* 410 U.S. at 93, 93 S.Ct. at 839 (stating that *in camera* inspection "need not be automatic," and that an agency should have the opportunity "to establish with the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency"); *Maynard,* 986 F.2d at 558. The government retains the burden of proving the applicability of a FOIA exemption during *in camera* review. *See* 5 U.S.C. § 552(a)(4)(B); *Maynard,* 986 F.2d at 557.

The parties do not dispute that the Court may resolve the applicability of exemptions at the summary judgment phase, but do disagree over whether the Vaughn index submitted by the DOI Defendants provides enough detail for the Court to assess whether these Defendants have met their burden for establishing FOIA exemptions. Plaintiff argues that, for many documents, the DOI Defendants have set forth only conclusory assertions of privilege, rather than explaining how the information contained in the documents qualifies as exempt under the FOIA. In Plaintiff's view, these deficiencies should lead the Court to order immediate disclosure of the requested information. The DOI Defendants maintain that their index does provide enough information to support their claims of exemption and that, if the Court concludes otherwise, it should order a supplementation of the Vaughn index instead of automatic disclosure. The Court, however, will base its exemption rulings on the information that Defendants have provided. While the Court will hold that Defendants have met their burden of establishing the privileges claimed for some of the documents, for many documents, the lack of information provided by the DOI Defendants will lead the Court to conclude that they have not met their burden of establishing that the claimed privileges do protect the information that they seek to withhold. In replying to Plaintiff's opposition motion, the DOI Defendants should have provided the Court with an enhanced description of each document and a detailed, document-specific explanation as to why the claimed privileges justify the withholding of the documents. This failure has left the Court and Plaintiff in a position only to engage in guess-work in assessing the meaning of ambiguous terminology and in ascertaining whether there exists any possibilities for segregation of nonexempt information. Under the FOIA, this is not sufficient. Because the Court's decision regarding the sufficiency of document descriptions and claimed exemptions is inextricably connected to the standards for evaluating exemptions under the FOIA, the Court will turn to these standards before setting forth its rulings on the adequacy of the Vaughn index descriptions of individual documents.

### III. EXEMPTION 5

█ Exemption 5 of the FOIA permits the withholding of "inter-agency or intra-

agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 serves the purpose of "enabl[ing] the government to benefit from 'frank discussion of legal or policy matters.'" *Federal Trade Comm'n v. Grolier, Inc.,* 462 U.S. 19, 23, 103 S.Ct. 2209, 2212, 76 L.Ed.2d 387 (1983) (citing S.Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. at 10 (1966), U.S.Code Cong. & Admin. News 1996 at 2418). Courts have interpreted this exemption to permit withholding of documents "'normally privileged in the civil discovery context,'" *Church of Scientology Int'l,* 30 F.3d at 224 (citing *Sears, Roebuck, & Co.,* 421 U.S. at 149, 95 S.Ct. at 1515–16), and to incorporate the attorney-client privilege, the attorney work product privilege, and the executive deliberative process privilege. *See Sears, Roebuck & Co.,* 421 U.S. at 150–55, 95 S.Ct. at 1516–18; *Providence Journal Company v. United States Dep't of the Army,* 981 F.2d 552, 557 (1st Cir.1992); *Coastal States Gas Corp.,* 617 F.2d at 862. In determining the extent to which these privileges apply under Exemption 5, a court must keep in mind that, consistent with the FOIA's goal of broad disclosure, "Congress intended Exemption 5 to be 'as narrow[ ] as [is] consistent with efficient Government operations.'" *Grolier, Inc.,* 462 U.S. at 23, 103 S.Ct. at 2212 (citing S.Rep. No. 813 at 9; H.R.Rep. No. 1497 at 10). Also consistent with its goals of broad disclosure, the FOIA provides for the disclosure of "[a]ny reasonable segregable portion of a record . . . after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

In this litigation, the DOI Defendants have asserted both the attorney-client privilege and the work product privilege as grounds for withholding information under FOIA Exemption 5. The DOC Defendants have invoked these privileges, as well as the deliberative process privilege, as reasons for their ability to withhold documents under FOIA Exemption 5. The Court will consider each of these arguments in turn.

## A. The Attorney–Client Privilege

 The attorney-client privilege serves to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). This privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.* (citing *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980)). While this privilege "extends to all situations in which an attorney's counsel is sought on a legal matter," and is, therefore, not limited to communications prepared in anticipation of litigation, *Coastal States Gas Corp.,* 617 F.2d at 862, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Hence, it does not protect documents simply because they result from an attorney-client relationship. *See Mead Data Central v. United States Dep't of Air Force,* 566 F.2d 242, 253 (D.C.Cir.1977).

 A party asserting the attorney-client privilege also has the burden of establishing four elements:

> (1) that he was or sought to be a client [of the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) that the privilege has not been waived.

*United States v. Bay State Ambulance and Hospital Rental Service, Inc.,* 874 F.2d 20, 27–28 (1st Cir.1989) (citing *United States v. Wilson,* 798 F.2d 509, 512 (1st Cir.1986)). *See also Town of Norfolk v. United States Army Corps of Engineers,* 968 F.2d 1438, 1457 (1st Cir.1992). Courts have also understood that a factual communication made by a client to an attorney must be done with an intention of confidentiality in order to be privileged. *See, e.g., Coastal States Gas Corp.,* 617 F.2d at 863 ("The purpose of the privilege is limited to the protection of confidential facts."); *Tax Analysts,* 117 F.3d at 618 ("The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services."). While this test allows the attorney-client privilege to protect communications made by an attorney to a client, the third element serves as a significant limitation on this protection. In order to receive protection under this privilege, communications made by attorneys to clients must relate to confidential facts communicated by the client for the purpose of securing a legal opinion, legal services, or legal assistance. *See Town of Norfolk,* 968 F.2d at 1458; *Brinton v. Department of State,* 636 F.2d 600, 603 (D.C.Cir.1980) ("Whatever the precise formulation of this standard, it is clear that when an attorney conveys to his client facts obtained from other persons or sources, those facts are not privileged. To allow the contrary rule would permit agencies to insulate facts from FOIA disclosure by simply routing them through lawyers in the agency and invoking the attorney-client privilege."); *Coastal States Gas Corp.,* 617 F.2d at 862 ("While its purpose is to protect a client's disclosures to an attorney, the federal courts extend the privilege also to an attorney's written communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust.").

The DOC Defendants have claimed the attorney-client privilege as a ground for withholding eight documents under Exemption 5.[8] Plaintiff does not challenge the withholding of these documents under this privilege and, therefore, the Court will not order their disclosure. Plaintiff does, however, challenge the DOI Defendants' withholding of 186 documents under this privilege. In support of their assertion of the attorney-client privilege, the DOI Defendants' Vaughn index sets forth brief descriptions of the contents of each document and the names of the individuals sending and receiving the documents. The DOI Defendants have also submitted two declarations by Edward T. Keable, Attorney–Advisor in the Office of Solicitor, United States Department of Interior. *See* Declaration of Edward T. Keable, Defendants' Statement of Material Facts, Exhibit 4; Second Declaration of Edward T. Keable, Reply in Support of Defendants' Motion for Partial Summary Judgment, Exhibit 11. It is significant that the second declaration identifies, for the first time, the positions of the individuals listed in the Vaughn index. Other than providing the job positions of the various individuals listed on the Vaughn index, Keable's declarations merely outline the procedures the DOI Defendants followed in responding to Plaintiff's FOIA request and state that he has determined that the documents were properly withheld under the claimed exemptions. In addition to their argument regarding the inadequacy of the information submitted in Defendants' Vaughn index, *see supra,* Plaintiff argues that Defendants have failed to establish the attorney-client privilege for any of the documents withheld under this privilege. Specifically, with regard to documents involving communications from attorneys to agency officials and/or other attorneys, Plaintiff contends that Defendants have failed to establish that these communications relate to confidential factual commu-

---

**8.** *See* DOC Defendants' Vaughn Index, Documents 4, 5, 9, 11, 14, 16, 17, and 18.

nications made by a client. With regard to documents involving communications from agency officials to their attorneys, Plaintiff contends that the Defendants have failed to establish that the documents contain information that was intended to be kept confidential or that the privilege has not been waived. Plaintiff also points out that two documents do not appear to contain any communications whatsoever. Defendants' only reply to these arguments consists of its submission of the second Keable Declaration identifying the positions of the individuals and a conclusory statement regarding DOI's determination that that the elements of the attorney-client privilege had been established.

 In evaluating the applicability of the attorney-client privilege to the documents claimed exempt under FOIA Exemption 5, the Court notes as a preliminary matter that the parties have largely set forth their arguments only by way of example rather than by specifically describing the applicability or inapplicability of the privilege to each document. Moreover, rather than using their examples to argue the borderline cases, in most instances, the parties have selected examples that make out the strongest argument in support of the privilege. The parties have taken somewhat of a gamble by using this approach, as the Court must rule on each document. The Court holds that the following documents listed in the DOI Defendants' Vaughn index do fall within FOIA Exemption 5 because of the attorney-client privilege: 3, 15, 16, 21, 46, 52, 77, 244, 245, 247, and 275. The Court

finds that the attorney-client privilege does not protect the following documents listed in the DOI Defendants' Vaughn Index: 2, 5, 6, 7, 8, 9, 10, 12, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 31, 34, 35, 36, 37, 38, 39, 41, 42, 48, 49, 50, 56, 57, 59, 60, 61, 62, 63, 64, 65, 66, 68, 69, 70, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 89, 90, 91, 92, 93, 94, 97, 98, 103, 104, 109, 110, 111, 112, 113, 114, 118, 122, 123, 124, 125, 127, 129, 130, 131, 132, 133, 134, 136, 137, 141, 142, 158, 159, 161, 162, 163, 165, 169, 173, 174, 176, 177, 178, 179, 180, 181, 182, 184, 185, 188, 189, 190, 192, 194, 197, 198, 199, 200, 201, 202, 203, 205, 206, 207, 208, 211, 212, 216, 217, 218, 220, 223, 225, 227, 228, 230, 231, 234, 235, 236, 237, 238, 248, 249, 250, 251, 252, 253, 256, 260, 265, 266, 267, 270, 271, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 297, 299, 304, and 307. For many of these documents, Defendants have failed to establish or to indicate to the Court in any way that they might be able to establish the requisite element of a client-communicated confidential fact.[9] Indeed, the description of one of these documents as "legal analysis of client agency official's notes for an ... Aquaculture *presentation*" leaves the Court to wonder how the client could have intended or maintained confidentiality in the underlying communication.[10] Similarly, several other documents consist of legal advice and analysis on draft letters, declarations, proposed rules, briefing papers, and statements of material facts written by agency officials, or comments and complaints submitted by Plaintiff or other parties;[11] from many of these, only legal analyses have been redacted.[12] This information

9. *See* DOI Defendants' Vaughn Index, Documents 2, 5, 6, 7, 8, 9, 10, 12, 17, 18, 19, 20, 22, 27, 29, 34, 37, 39, 41, 42, 48, 49, 56, 57, 61, 62, 63, 64, 65, 66, 68, 70, 71, 72, 73, 74, 75, 76, 78, 80, 81, 82, 83, 89, 90, 91, 92, 93, 94, 113, 118, 122, 123, 127, 129, 130, 131, 132, 134, 141, 158, 159, 161, 162, 163, 165, 173, 174, 176, 179, 180, 181, 189, 190, 192, 194, 197, 198, 199, 200, 201, 202, 203, 205, 206, 211, 212, 216, 217, 219, 220, 225, 227, 228, 230, 231, 234, 236, 237, 238, 248, 252, 253, 256, 260, 265, 270, 271, 278, 286, 279, 280, 281, 282, 283, 284, 285, 297, 299, and 304.

10. *See* DOI Defendants' Vaughn Index, Document 2 (emphasis added).

11. *See* DOI Defendants' Vaughn Index, Documents 26, 28, 31, 35, 36, 38, 42, 50, 60, 69, 79, 97, 98, 103, 104, 109, 111, 112, 114, 124, 125, 133, 136, 137, 142, 169, 177, 178, 182, 184, 185, 218, 223, 249, 250, 251, 266, 267, and 307.

12. *See* DOI Defendants' Vaughn Index, Documents 26, 28, 31, 35, 36, 38, 50, and 60.

falls outside the scope of the attorney-client privilege not only because Defendants have failed to set forth a showing of a confidential factual communication, but also because they fail to explain how the withheld legal analysis would reveal any such fact if it existed. Under the FOIA, Defendants have a burden to do so. Three documents contain no communication whatsoever;[13] one of these consists of handwritten notes of a settlement conference at which Plaintiff's counsel was present.[14] Finally, some of the documents withheld under this privilege do not contain communications between clients and attorneys, but rather communications between clients (in the form of letters and e-mails) that have been forwarded on to agency attorneys.[15] Allowing the withholding of these documents as exempt under the attorney-client privilege would eviscerate the purposes of the FOIA because it would allow agencies to withhold all documents simply by forwarding them to agency attorneys. *See Brinton,* 636 F.2d at 603.

The following documents appear to contain some information based on a confidential communication from a client; however, it appears to the Court that these documents listed in the DOI Defendants' Vaughn Index may also contain some segregable nonprivileged information: 4, 11, 13, 32, 117, 254, and 257. The Court will conduct *in camera* review of these documents to assess the segregability of the nonexempt information.

## B. The Work Product Privilege

Under the Federal Rules of Civil Procedure, the attorney work product doctrine provides complete protection against discovery of "the mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party concerning the litigation," and allows for discovery of "documents and tangible things ... prepared in anticipation of litigation or for trial" only upon a showing of "substantial need and undue hardship." Fed.R.Civ.P. 26(b)(3). This doctrine serves to protect the integrity of the adversary process by enabling an attorney to engage in the "proper preparation of a client's case ... without undue and needless interference." *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *Scott Paper Co. v. Ceilcote Co., Inc.,* 103 F.R.D. 591, 594 (D.Me. 1984). Although FOIA Exemption 5 incorporates this privilege, *see Sears, Roebuck, & Co.,* 421 U.S. at 150–55, 95 S.Ct. at 1515–16, two issues arise when applying the work product privilege in the FOIA context. First, the reality that agency rulemaking on controversial subjects frequently presents the prospect of litigation in the form of a challenge to a final rule may make it difficult to assess whether a document claimed exempt under the work product privilege was prepared in anticipation of litigation. Second, whether factual information, which would normally be disclosed upon a showing of substantial need and undue hardship, should be made available to a FOIA plaintiff cannot be resolved by normal discovery principles because "the FOIA does not permit inquiry into the particular needs of an individual seeking the information." *Mink,* 410 U.S. at 86, 93 S.Ct. at 835. *See also Sears, Roebuck, & Co.,* 421 U.S. at 149 n. 16, 95 S.Ct. at 1515 n. 16; *Gov't Land Bank,* 671 F.2d at 668 ("The issue of whether disclosure is required by FOIA turns on the nature of the document, not the particular party requesting it. Thus, an individual applicant's need for information is not to be taken into

---

**13.** *See* DOI Defendants' Vaughn Index, Documents 23, 24, and 110.

**14.** *See* DOI Defendants' Vaughn Index, Document 23.

**15.** *See* DOI Defendants' Vaughn Index, Documents 188, 207, 208, and 287. The Vaughn index leaves unclear whether certain memoranda were prepared for distribution to other agency officials or to the public. *See, e.g.,* Document 287. In either event, the Court would order the disclosure of the documents.

account in determining whether materials are exempt.").

The Court begins its analysis of the first of these issues by noting that a showing that a document was prepared in anticipation of litigation is key to sustaining the burden required under FOIA Exemption 5. *See Church of Scientology,* 30 F.3d at 237 ("We believe that, at a minimum, an agency seeking to withhold a document in its entirety under this exemption must identify the litigation for which it was created (either by name or through factual description) and explain why the work product privilege applies to all portions of the document."); *Coastal States Gas Corp.,* 617 F.2d at 864–65 (identifying preparation in anticipation of litigation as "one significant limitation" on the work product privilege and stating that "it is firmly established that there is no privilege at all unless the document was initially prepared in contemplation of litigation or in the course of preparing for trial"). The parties dispute the meaning of the phrase "prepared in anticipation." Plaintiff contends that the DOI Defendants have not established that many of the documents claimed exempt under this privilege were prepared in anticipation of litigation because the Vaughn index fails to identify the litigation for which the documents were prepared or to establish that litigation purposes motivated the preparation of the documents. In their Reply, the DOI Defendants counter that the attorney work product privilege applies to documents "created in contemplation of reasonably foreseeable litigation." Reply in Support of Defendants' Motion for Partial Summary Judgment at 5. Because the Atlantic salmon listing process had already resulted in litigation at the time of the creation of many of the documents and the DOI Defendants suspected that it would likely lead to more litigation, the DOI Defendants argue, the attorney work product privilege should protect these documents. The second Keable declaration submitted by Defendants in their reply identifies three lawsuits and two possibilities of litigation that arose from this rulemaking. *See id.;* Second Keable Declaration ¶ 4 (identifying *Defenders of Wildlife, et al. v. Babbit, et al.,* No. 99CV02143–CKK, D.D.C.; *Trout Unlimited, et al. v. Babbit, et al.,* No. 99CV02143–CKK, D.D.C.; *State of Maine v. U.S. Dep't of the Interior et al.,* Civil No. 00–30–B–C, (D Me.); State of Maine's threat to challenge final rule, and Maine Aquaculture Association's warning that it would sue the Departments if pen permits are modified to protect wild salmon).

The DOI Defendants propose an overly broad use of the phrase "prepared in anticipation of litigation." This Court has previously held that the determinative question in assessing the applicability of the work product privilege is whether the prospect of litigation served as the primary motivating factor for the preparation of the document. *See Scott Paper Co.,* 103 F.R.D. at 594. Given the mandate of the Supreme Court to construe FOIA exemptions narrowly, *see, e.g., Dep't of the Air Force,* 425 U.S. at 361, 96 S.Ct. at 1599, the Court sees no reason to apply a different rule in this case. Exempting documents prepared for multiple purposes in instances in which litigation might have been foreseeable would eviscerate the purposes of the FOIA by potentially allowing the withholding of any document that was created during an agency's decision to promulgate a controversial rule, while doing nothing to advance the core purpose of the attorney work product privilege—the protection of the "adversary trial process itself." *Coastal States Gas Corp.,* 617 F.2d at 864.[16] In order to sustain their burden

16. The Court notes that although the DOI Defendants cite *Schiller v. NLRB,* 964 F.2d 1205, 1208 (D.C.Cir.1992), for the proposition that litigation need only be foreseeable to qualify as exempt under Exemption 5, the court's discussion of foreseeability took place in the context of its broader assertion that "Exemption 5 extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is noted." The crux of the

for establishing the attorney work product privilege, the DOI Defendants' Vaughn index must identify the litigation for which each document was prepared and establish that the document was prepared primarily for litigation purposes.

██ In order to determine whether Defendants have met their burden of establishing the attorney work product privilege for many of the documents, the Court must also resolve whether FOIA Exemption 5 encompasses the factual component of an attorney's work product. As noted above, this question is complicated by the tension inherent in Rule 26(b)(3)'s requirement of a showing of substantial need and undue hardship, and the prohibition on inquiring into the particularized needs of a FOIA requestor. The Courts of Appeals that have addressed this issue have split in their resolution of this tension. The Court of Appeals for the D.C. Circuit has held that the assertion of the work product privilege under Exemption 5 encompasses both factual and opinion material, relying on the Supreme Court's instruction that "only documents 'normally' or 'routinely' disclosable in civil discovery fall outside the protection of the exemption," and reasoning that the undue hardship and substantial need showing requirement for factual work product brings it outside the scope of normal discovery. *Martin v. Office of Special Counsel, Merit Systems Protection Board,* 819 F.2d 1181, 1184–87 (D.C.Cir.1987). However, several other circuit courts have come to the opposite conclusion, holding that FOIA Exemption 5 does not permit an agency to withhold factual materials that can be segregated from an attorney's thought processes. *See Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724 (5th Cir.1977), *rev'd on other grounds,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Poss v. NLRB,* 565 F.2d 654 (10th Cir.1977); *Deering Millik-*

*en, Inc. v. Irving,* 548 F.2d 1131 (4th Cir. 1977). *See also Fine v. United States Dep't of Energy,* 830 F.Supp. 570 (D.N.M. 1993) (discussing circuit split and adopting the approach of the Fourth and Fifth Circuit Courts of Appeals). *C.f. Brockway v. Dep't of Air Force,* 518 F.2d 1184 (8th Cir.1975) (accepting factual-deliberative distinction but holding that factual statements given to Air Force safety investigators upon assurances of confidentiality would defeat rather than promote purposes of the FOIA). These courts have generally based their reasoning on the FOIA's goal of broad disclosure and a reading of the Supreme Court's precedent in *Mink* to require segregation of factual and deliberative material for all privileges invoked under Exemption 5. *See Mink,* 410 U.S. at 92–94, 93 S.Ct. at 838–40. While the Court of Appeals for the First Circuit has not ruled precisely on this issue, its opinion in *Church of Scientology* indicates that it is in agreement with the majority of the circuit courts. In ruling on the adequacy of the Vaughn index, the court noted that "[a]s with all exemptions, [the agency] must offer some basis for concluding that there are no segregable, nonexempt portions of the document." 30 F.3d at 237. By stating that "[n]either the Church nor the Court is able to evaluate meaningfully whether all of the factual material properly is exempted from disclosure because it is integrated into the document as part of the attorney's pretrial work, in which case it could properly be withheld," the court indicated that it considered factual work product to be such segregable, nonexempt information. *Id.* The Court agrees with the approach taken by the majority of the circuit courts of appeals and embraced by the Court of Appeals for the First Circuit, and will, therefore, allow Defendants to withhold only documents containing work

---

*Schiller* court's holding rested on the second half of this assertion, as the court had to decide whether a party had to identify specific claims in order to assert the work product privilege. *See id.* Moreover, unlike many of

the documents the Court now holds nonexempt under Exemption 5, the Vaughn index in *Schiller* described the documents as setting forth defense tips and tips for handling cases. *See id.*

product that reveals an attorney's deliberative processes.

■ The DOC Defendants have claimed the attorney work-product privilege as a ground for withholding five documents,[17] and the DOI Defendants have invoked this privilege for 254 documents. Plaintiff does not challenge the DOC Defendants' assertion of this privilege and, therefore, the Court will not order disclosure of these documents. Plaintiff challenges only the DOI Defendants' invocation of this privilege. To summarize, the DOI Defendants must establish that the information withheld under the attorney work product privilege under FOIA Exemption 5 was prepared primarily in anticipation of identified litigation and that it contains only deliberative processes, such as "the mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party," or factual material not segregable from such deliberative processes. The Court now turns to the documents. The Court holds that the DOI Defendants have set forth a sufficient showing of the work product privilege to justify their withholding of the following documents under Exemption 5: 5, 6, 8, 9, 10, 14, 17, 18, 25, 30, 37, 43, 53, 61, 63, 66, 67, 68, 89, 143, 147, 164, 166, 167, 168, 176, 196, 211, 213, 214, 216, 221, 222, 224, 226, 228, 229, 231, 232, 235, 259, 262, 266, 268, 269, 270, 275, 276, 277, 278, 282, 285, 286, 291, 292, 293, 299, 304, and 305. The DOI Defendants have not set forth a sufficient showing of work product privilege to justify the withholding of the following documents: 2, 4, 7, 12, 13, 20, 26, 28, 29, 31, 32, 35, 36, 38, 39, 41, 42, 45, 46, 47, 48, 49, 50, 51, 52, 55, 57, 58, 60, 62, 64, 69, 70, 71, 72, 73, 74, 75, 76, 77, 79, 80, 81, 82, 84, 85, 86, 87, 88, 91, 92, 95, 96, 97, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 114, 115, 116, 117, 118, 119, 120, 121, 123, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 137, 138, 139, 140, 141, 142, 146, 148, 151, 152, 154, 156, 161, 162, 169, 170, 171, 172, 173, 174, 177, 178, 181, 182, 183, 184, 186, 187, 188, 191, 192, 194, 197, 199, 200, 203, 204, 205, 207, 208, 210, 215, 218, 230, 233, 236, 239, 240, 241, 242, 243, 244, 245, 246, 248, 249, 250, 251, 252, 253, 256, 260, 261, 263, 272, 273, 274, 287, 296, 297, 300, 301, 302, and 308. With regard to the majority of these documents, Defendants have failed to either identify the litigation for which the document was prepared or to set forth a showing that the document was prepared primarily in anticipation of litigation.[18]

---

**17.** See DOC Defendants' Vaughn Index, Documents 5, 9, 11, 14, and 18.

**18.** *See* DOI Defendants' Vaughn Index, Documents 2, 4, 7, 12, 13, 20, 26, 28, 29, 31, 32, 35, 36, 38, 39, 41, 42, 45, 46, 47, 48, 49, 50, 51, 52, 55, 58, 60, 62, 64, 70, 71, 72, 73, 74, 75, 76, 79, 80, 81, 82, 91, 92, 97, 114, 115, 116, 117, 119, 120, 121, 123, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 137, 138, 139, 140, 141, 142, 146, 148, 151, 152, 154, 156, 161, 162, 169, 170, 171, 172, 173, 174, 177, 178, 181, 182, 183, 184, 186, 187, 188, 191, 197, 199, 200, 203, 204, 205, 207, 208, 210, 215, 230, 233, 234, 236, 239, 240, 241, 242, 243, 244, 245, 246, 248, 249, 250, 251, 252, 253, 255, 256, 260, 263, 267, 268, 269, 271, 272, 273, 274, 296, 297, 300, 301, and 308. Defendants' assertion of the work product privilege for many of these documents has been substantially weakened by their failure to provide the Court with any explanation whatsoever of the issues raised in the litigation identified in the Second Keable Declaration. For example, Defendants identify *Trout Unlimited* as a case filed in the D.C. District Court, *see* Second Keable Declaration ¶ 4, but do not set forth the issues litigated in this case. Only from the description of Document 155 on the DOI Defendants' Vaughn index, can the Court extrapolate that this suit involves a request for an emergency listing of the Atlantic salmon. Several documents in the Vaughn index contain ambiguous references to emergency listing decisions, *see, e.g.,* DOI Vaughn Index, Documents 71, 234, and 267, and very well may have been prepared in anticipation of the *Trout Unlimited* litigation. However, it is Defendants' burden under the FOIA to specifically establish why each withheld document falls within a FOIA exemption. When the DOI Defendants have set forth only ambiguous and piecemeal explanations of the contents of the documents and their possible relevance to litigation, this leaves the Court and the Plaintiff to wonder whether the document was prepared in anticipation of litigation or as part of the agency rulemaking process. Consistent with the FOIA's goal of broad disclosure and placement of the burden

For some documents, including some of the documents for which litigation was not identified, Defendants have not demonstrated that the documents were prepared by an attorney or an agent of an attorney.[19] Moreover, some of the DOI Defendants' documents claimed exempt under the work product privilege do not indicate that the documents contain anything other than factual material, which is not privileged in the FOIA context.[20]

For the following documents, the DOI Defendants have sufficiently established the applicability of the work product privilege for some of the information, but it appears that there may be some segregable factual material and, in order to determine segregability, the Court will conduct *in camera* review of DOI Defendants' Vaughn Index Documents: 11, 19, 33, 34, 44, 54, 56, 59, 65, 126, 144, 145, 149, 150, 153, 155, 157, 160, 175, 179, 180, 193, 195, 209, 220, 264, 271, 289, 294, 295, 298, 303, 306, and 307.

**C. The Deliberative Process Privilege**

■■■ The deliberative process privilege serves to prevent "injury to the quality of agency decisions." *Sears, Roebuck, & Co.*, 421 U.S. at 151, 95 S.Ct. at 1516. It does so by ensuring circulation of "uninhibited opinions and recommendations" within an agency, protecting against the premature disclosure of rules and policies, and preventing public confusion over the ultimate rationales for an agency's decision. *See Providence Journal Co.*, 981 F.2d at 557 (citing *Coastal States Gas Corp.*, 617 F.2d at 866). A government agency must meet two requirements in order to properly withhold a document under this privilege. "First, the document must be prepared prior to a final decision in order to assist an agency decisionmaker in arriving at his decision. Second, the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions in legal or policy matters." *Town of Norfolk*, 968 F.2d at 1458 (quotations omitted). *See also Providence Journal Co.*, 981 F.2d at 557–62. This privilege does not protect factual information that is segregable from the deliberative component. *See Town of Norfolk*, 968 F.2d at 1458; 5 U.S.C. § 552(b).

The DOC Defendants assert the deliberative process privilege to support the withholding of all twenty-three documents identified in their Vaughn index. Plaintiff challenges the withholding of only six of these documents. For five of these documents, Documents 6, 8, 15, 19, and 20, Plaintiff argues that the descriptions given by the Defendants indicate that these documents may contain some factual information and that Defendants have not demonstrated that this factual information is nonsegregable from the material that reflects the Defendants' deliberative process. Plaintiff suggests that the Court engage in *in camera* review of these documents in order to resolve the extent to which the deliberative process privilege protects the information in the documents. The DOC Defendants oppose this suggestion. The DOC Defendants assert that the selection of facts itself reflects their deliberative process, and that they have met their burden of demonstrating that the factual information is nonsegregable. Defendants argue that requiring them to set forth any further information would defeat the purpose of the FOIA exemption by requiring them to expose the information in order to protect it.

---

of proof on the defendant, the Court has resolved the ambiguity in favor of disclosure.

**19.** *See* DOI Defendants' Vaughn Index, 42, 57, 77, 194, and 287.

**20.** *See* DOI Defendants' Vaughn Index, 12, 118, and 192. This is also true for DOI

Documents 84, 85, 86, 87, 88, 95, 96, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 261, and 302. Although the use of the word "declaration" to describe these documents suggests that they were prepared in anticipation of litigation, they do not appear to reveal the mental processing of an attorney.

With regard to Plaintiff's suggestion of segregability of the factual information in these documents, the Court notes that Plaintiff has not specifically identified the factual information that it alleges is referred to in Defendants' Vaughn index. The Court's review of the Vaughn index leads it to conclude that only four of the documents, Documents 6, 15, 19, and 20, appear to contain some factual information.[21] Document 8 does not appear to contain any such information, and the Court will therefore allow its withholding. The question that the Court must resolve for these documents is whether the DOC Defendants' mere assertion that the deliberative process privilege protects these facts because they "were selectively chosen as part of the decision-making process" is sufficient to establish its burden of nonsegregability. DOC Defendants' Vaughn Index at ¶¶ 6, 15, 19, 20. In *Providence Journal Company*, 981 F.2d at 562, the First Circuit Court of Appeals held that an Inspector General's ("IG") findings of fact in an investigation against officers did reveal the IG's deliberative process because their disclosure "would necessarily reveal the opinion of the IG on the credibility and probity of the evidence relating to each allegation." However, the court indicated that "mere selection of the evidence deemed material to an agency decision may not implicate Exemption 5," and rested its decision on its reasoning that "[f]indings of fact in the personnel management context reflect a significant degree of subjectivity" and that the IG's factual findings reflected his evaluation of conflicting witness statements. *Providence Journal Company*, 981 F.2d at 562. A governmental agency's discussion of new information and developments is markedly different from the factual findings of an IG in the face of conflicting evidence, and Defendants have not explained to the Court how the selection of the information would reflect any subjectivity or deliberation on the agency's part. Hence, the Court will conduct *in camera* review of these four documents to determine whether this factual information can be segregated from the deliberative information in the document.

For the remaining document, Document 21, Plaintiff points out that its description indicates that it reveals a discussion about the prospect of litigation. Plaintiff contends that because 16 U.S.C. § 1533(b) limits an agency's consideration to "the basis of the best scientific and commercial data available" in determining whether to list a species as endangered under the ESA, the Defendants may not invoke the deliberative process privilege to protect their evaluation of the prospect of litigation. Defendants oppose this position, and argue that limiting the deliberative process privilege to "only deliberations and considerations that Plaintiff believes appropriate ... would undermine the purpose of the privilege" by chilling deliberation, and that they may and must consider more than the "best scientific evidence" in determining whether to list a species as eligible for ESA protection.[22] Defendants also maintain that this document does not reflect officials' consideration of litigation, but instead reflects their deliberations as how to best protect salmon and their deliberations as how to respond to final or interim challenges regarding their decision to protect salmon. The Court is not persuaded by Plaintiff's argument for disclosure of Document 21. The deliberative process privilege's purposes of preventing uninhibited discussion and preventing the public from being mislead over the ulti-

---

21. Specifically, the DOC Defendants' Vaughn index describes Document 10 as containing "newly acquired information concerning threats to Atlantic salmon," Document 15 as containing "new information involving numbers of fish population," and Documents 19 and 20 as referring to a "new development in efforts to protect Atlantic salmon."

22. Defendants rely on 16 U.S.C. § 1533(a)(1), (b)(1), and (b)(2) in support of their third counterargument. While these provisions do provide for consideration of other factors, they do not provide for consideration of the prospect of litigation.

mate rationales of an agency's conclusions contemplate the privilege's protection of information that might not, and possibly should not, govern an agency's determination of its rule or policy. Hence, the Court will not order disclosure and will not engage in *in camera* review of Document 21.

## IV. EXEMPTION 6

■ FOIA Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U .S.C. § 552(b)(6). The Supreme Court has explained that the phrase "similar files" should be read broadly in order to advance Congress's intention to protect individuals' right to privacy. *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–603, 102 S.Ct. 1957, 1960–62, 72 L.Ed.2d 358 (1982) (citing H.R.Rep. No. 89–1497 at 11 (1966), S.Rep. No. 89–813 at 9 (1965), S.Rep. No. 88–1219 at 14 (1964)). The balancing of the public interest in the disclosure of the requested information and the privacy interest threatened by disclosure of the information guides the determination of the applicability of FOIA Exemption 6. *See Dep't of the Air Force*, 425 U.S. 352, 372–73, 96 S.Ct. 1597, 1604–05 (1976).

■ The DOI Defendants have invoked this exemption to justify the withholding of portions of two documents, identified as Documents 1 and 40 on their Vaughn index. Although these two documents are identified by different Bates labels, it appears from their descriptions, dates, and sending and receiving parties that these documents are identical. In any event, the Vaughn index description for both documents indicates that Defendants have redacted from these documents only the names and addresses of individuals who offered public comments on Maine's listing plan. Plaintiff does not challenge this redaction, and the Court finds that this redacted information is exempt under FOIA Exemption 6. The

Court, therefore, holds Documents 1 and 40 on the DOI Defendants' Vaughn index exempt from FOIA disclosure.

## CONCLUSION

Accordingly, the Court **ORDERS** that the DOI Defendants may properly withhold the following documents as exempt under the FOIA: 1, 3, 5, 6, 8, 9, 10, 14, 15, 16, 17, 18, 25, 30, 37, 40, 43, 46, 52, 53, 61, 63, 66, 67, 68, 77, 89, 143, 147, 164, 166, 167, 168, 176, 211, 213, 214, 216, 221, 222, 224, 226, 228, 229, 232, 235, 244, 245, 247, 255, 259, 262, 266, 268, 269, 270, 275, 276, 277, 278, 282, 285, 286, 291, 292, 293, 299, 304, and 305. The Court further **ORDERS** the prompt disclosure to Plaintiff of the following documents listed in the DOI Defendants' Vaughn index: 2, 7, 12, 20, 21, 22, 23, 24, 26, 27, 28, 29, 31, 35, 36, 38, 39, 41, 42, 45, 47, 48, 49, 50, 51, 55, 57, 58, 60, 62, 64, 69, 70, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 122, 123, 124, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 146, 148, 151, 152, 154, 156, 158, 159, 161, 162, 163, 165, 169, 170, 171, 172, 173, 174, 177, 178, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 194, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 210, 212, 215, 217, 218, 219, 223, 225, 227, 230, 231, 233, 234, 236, 237, 238, 239, 240, 241, 242, 243, 246, 248, 249, 250, 251, 252, 253, 256, 258, 260, 261, 263, 265, 267, 272, 273, 274, 279, 280, 281, 283, 284, 287, 288, 290, 296, 297, 300, 301, 302, and 308. The DOI Defendants must release documents to the Plaintiff five (5) days from the entry of this Memorandum of Decision and Order. The Court further orders that the DOI Defendants must submit the following documents to the Court for *in camera* review: 4, 11, 13, 19, 32, 33, 34, 44, 54, 56, 59, 65, 126, 144, 145, 149, 150, 153, 155, 157, 160, 175, 179, 180, 193, 195, 209, 220, 254, 257, 264, 271, 289, 294, 295, 298, 303, 306, and 307. The DOI

Defendants must submit these documents to the Court five (5) days from the entry of this Memorandum of Decision and Order. With regard to the DOC Defendants, the Court **ORDERS** that the following documents may be properly withheld under the FOIA exemptions: 8, 21. The Court further **ORDERS** the submission of the following DOC documents to the Court for *in camera* review so that the Court may rule on the segregability of nonexempt information: 6, 15, 19, and 20. The DOC Defendants must submit these documents to the Court five (5) days from the entry of this Memorandum of Decision and Order.

## ORDER AMENDING ORDERING PARAGRAPH OF MEMORANDUM OF DECISION AND ORDER OF DECEMBER 26, 2000

The Court having **NOTED** *sua sponte* that a clerical error has occurred in the drafting of the ordering paragraph of its December 26, 2000, Memorandum of Decision and Order (Docket No. 29)(at 35–36) and having **GRANTED** Defendants an extension of time to comply with the December 26, 2000, Memorandum of Decision and Order, *see* Docket No. 32, the court hereby **ORDERS** that the said paragraph be, and is hereby **AMENDED**, to read as follows:

### CONCLUSION

Accordingly, the Court **ORDERS** that the DOI Defendants may properly withhold the following documents as exempt under the FOIA: 1, 3, 5, 6, 8, 9, 10, 14, 15, 16, 17, 18, 21, 25, 30, 37, 40, 43, 46, 52, 53, 61, 63, 66, 67, 68, 77, 89, 143, 147, 164, 166, 167, 168, 176, 211, 213, 214, 216, 221, 222, 224, 226, 228, 229, 231, 232, 235, 244, 245, 247, 259, 262, 266, 268, 269, 270, 275, 276, 277, 278, 282, 285, 286, 291, 292, 293, 299, 304, and 305. The Court further **ORDERS** the prompt disclosure to Plaintiff of the following documents listed in the DOI Defendants' Vaughn index: 2, 7, 12, 20, 22, 23, 24, 26, 27, 28, 29, 31, 35, 36, 38, 39, 41, 42, 45, 47, 48, 49, 50, 51, 55, 57, 58, 60, 62, 64, 69, 70, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 122, 123, 124, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 146, 148, 151, 152, 154, 156, 158, 159, 161, 162, 163, 165, 169, 170, 171, 172, 173, 174, 177, 178, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 194, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 210, 212, 215, 217, 218, 219, 223, 225, 227, 230, 233, 234, 236, 237, 238, 239, 240, 241, 242, 243, 246, 248, 249, 250, 251, 252, 253, 255, 256, 258, 260, 261, 263, 265, 267, 272, 273, 274, 279, 280, 281, 283, 284, 287, 288, 290, 296, 297, 300, 301, 302, and 308. The DOI Defendants must release thes documents to the Plaintiff by January 8, 2001. The court further orders that the DOI Defendants must submit the follow ing documents to the Court for *in camera* review: 4, 11, 13, 19, 32, 33, 34, 44, 54, 56, 59, 65, 117, 126, 144, 145, 149, 150, 153, 155, 157, 160, 175, 179, 180, 193, 195, 209, 220, 254, 257, 264, 271, 289, 294, 295, 298, 303, 306, and 307. The DOI Defendants must submit these documents to the Court by January 8, 20001. With regard to the DOC Defendants, the Court **ORDERS** that the following documents may be properly withheld under the FOIA exemptions: 8, 21. The Court further **ORDERS** the submission of the following DOC documents to the Court for *in camera* review so that the Court may rule on the segregability of nonexempt information: 6, 15, 19, and 20. The DOC Defendants must submit these documents to the Court by January 8, 2001.